## BEN FLETCHER *v.* THE STATE.

1. CRIMINAL LAW. *Continuance after venire drawn.* *Sect. 3059, Code 1880, construed.*

Under sect. 3059 of the Code of 1880, which provides that, "Applications for continuances in capital cases shall not be entertained after the drawing of a special venire, except for causes arising afterwards, unless good cause be shown for not having made the application before," a defendant in an indictment for murder is not entitled to a continuance, when his case is called for

trial, on the ground of the absence of a witness, who having been subpœnaed before the drawing of the special venire was then absent, unless good cause be shown for his failure to make the application before the drawing of the venire.

2. SAME. *Judge presiding out of his district. Record.*
When the record in a case of homicide shows that the judge presiding was presiding by interchange with the judge of the district in which the case is tried, it is not necessary for it to recite that the "public interest" required the interchange.

3. SAME. *Incompetent cumulative evidence. Erroneous admission thereof. Memorandum of committing magistrate.*
Upon the trial of F., under an indictment for murder, the court permitted the committing magistrate to read in evidence a pencil memorandum, made by him at the preliminary examination, of the testimony of a physician as to the nature of the wound inflicted on the deceased. The character of the wound and the fact that it was the cause of the death of the deceased were clearly established by other competent testimony. *Held,* that as the facts sought to be proven by the magistrate's memorandum *were* clearly established by other and competent evidence, the accused was not prejudiced by the admission of the memorandum in evidence.

4. SAME. *Juror. Competency. Opinion formed. Peremptory challenge.*
It is no ground for reversal of the judgment in a capital case that the court below declared competent, and thereby forced the defendant to challenge peremptorily, a juror who was incompetent, if it appear that the defendant obtained an impartial jury without exhausting his peremptory challenges.

5. SAME. *Regular venire. Special venire. List furnished defendant.*
The defendant in an indictment for murder is not entitled to be served with a list of the regular venire for the week one entire day before being put upon his trial. This requirement of the statute relates alone to the special venire.

APPEAL from the Circuit Court of Adams County.

Hon. J. B. CHRISMAN, Judge, specially presiding by exchange with Hon. RALPH NORTH.

On the 8th of June, 1881, Ben. Fletcher was indicted for the murder of Albert Davis; and in April, 1882, he was tried, convicted, and sentenced to be hanged. Thereupon he appealed to this court.

The record shows that the district attorney on the second day of the term asked for a special venire to try this case before either the State or the defendant was called on to answer whether ready for trial. The venire was returnable on the 6th day of April, 1882. On the 7th of April the case was called up for trial. Some of the defendant's witnesses who had been sub-

pœnaed (among them Henry Johnson), and who were shown to be within the jurisdiction of the court, so that compulsory process could secure their presence, failed to answer. Attachments were issued returnable *instanter*, and the trial postponed until the 17th day of April, on which day the case was taken up for trial. It appeared then that the attachment which had been issued for defendant's witness, Henry Johnson, had not been returned into court. Defendant then filed a motion and affidavit for continuance, showing the materiality of Henry Johnson's testimony, and that defendant had used due diligence to procure his attendance at the trial. The motion was overruled.

John Stevenson, a juror, on his *voir dire* disclosed the fact that he had formed an opinion that the defendant was guilty of murder, but stated that he had concluded to drop that opinion until he could ascertain whether or not there was any cause for the killing, and that unless a cause for the killing was shown on the trial, his opinion would be the same as at first formed by him. The court held the juror competent, and the defendant was compelled to challenge him peremptorily. Defendant, however, went to trial without exhausting his peremptory challenges.

During the trial the State offered to prove what Dr. T. S. Sharpe had sworn to in a preliminary examination of the case before Fred. Parsons, a justice of the peace. The defendant objected and the objection was overruled, and Fred. Parsons was sworn as a witness for the State. He testified that from personal recollection he could not state what Dr. Sharpe had sworn to at the preliminary examination. A paper purporting to be a memorandum of the testimony adduced at the preliminary examination was handed to the witness, who stated that Dr. Sharpe had been examined before him as a witness for the State; that the paper shown him was a memorandum of the proceedings, made by the witness at the time; and that the defendant and his counsel were present at the examination, when the memorandum was made. Witness was then permitted by the

court to read to the jury an extract from said memorandum of what purported to be a part only of Dr. Sharpe's testimony at the preliminary examination. The following is the part read : —

"Dr. T. S. Sharpe, sworn : I was called to examine Byram Dorsey on Christmas day, at a house in the rear of Mrs. Botto's. The wound was on the lower side of the neck, on the left side ; was about half an inch long, made by a sharp instrument. I probed it and came to the conclusion that the carotid artery had been cut, which would have produced death if it had not been tied up. Such a wound would produce death in twenty or thirty minutes."

On the trial another doctor testified to the same facts recited in the memorandum referred to.

The case was tried by the Hon. J. B. Chrisman, Judge of the Tenth Judicial District, who presided by exchange with Judge North, in whose district the trial took place, the reason for such exchange not appearing in the record.

The following instructions for the State were excepted to by the defendant : —

"2. Murder is the unlawful killing of a human being in the peace of the State, with malice aforethought or premeditated design, which is the same thing. Malice is either express or implied in law. Express malice is where one person kills another with a sedate, deliberate mind, and formed design ; such formed design being evidenced by external circumstances discovering the inward intention, as lying in wait, antecedent menaces, former grudges, and concerted schemes to do the party some bodily harm ; and malice is implied by law from any deliberate cruel act, committed by one against another, however sudden.

"3. The court further instructs the jury for the State that in cases where the act producing death be such as is ordinarily attended with dangerous consequences, as by the use of a deadly weapon, or be committed deliberately, the malice will be presumed unless some sufficient cause or provocation be shown, for the law infers that the natural or probable effects of any act deliberately done, were intended by the agent.

" 4. By reasonable doubt is not meant a mere supposition or suspicion that the defendant is not guilty, but such a doubt as naturally arises in the minds of the jurors as reasonable beings from the evidence in the case ; and whenever the evidence convinces the jury to a moral certainty of the guilt of the accused, they should find the defendant guilty, as charged. That moral certainty is that degree of certainty upon which the jurors should act in their own great and important concerns, and which satisfies the mind and conscience.

" 5. The court further instructs for the State that it is the privilege of the jury in case they agree on a verdict of guilty to affix the punishment to imprisonment in the penitentiary for life ; but if they agree upon the guilt of the prisoner as charged; but cannot agree on what the punishment shall be, then it is their duty to return a verdict of guilty as charged in the indictment, leaving to the court the duty of pronouncing the sentence of the law."

*J. G. Leach*, for the appellant.

To grant the defendant compulsory process to obtain a witness in his favor, and then compel him to go to trial before the process is executed and returned into court, is, in effect, the same as to refuse to allow the compulsory process to issue. It amounts to withholding from the accused the exercise of a constitutional right.   The power of a court to grant or refuse a continuance is, we admit, discretionary.   But in deciding the question, the court must exercise a legal, not an arbitrary, discretion.   And although this court will not disturb the ruling of the lower court, when the facts show that in the exercise of a sound legal discretion the circuit judge might have granted or might have refused a continuance, without doing injustice to the State or to the accused, yet when the facts show that in refusing a continuance, manifest wrong and injustice was done, this court will reverse the ruling of the lower court.   Sect. 3077, Rev. Code 1880, is the same as sect. 2806, Rev. Code 1871.   It entitles the defendant to a continuance, although the State admits the facts stated in

the affidavit, if compulsory process will possibly obtain the attendance of the absent witness, and the defendant has had no opportunity to obtain such process. 58 Miss. 53. In the case at bar, defendant had obtained compulsory process, but he was compelled to go to trial before the process was returned into court. He obtained the process as soon as the case was called to be tried, or otherwise disposed of for the term. The State had asked for a special venire on the second day of the term, when the docket was being called for the purpose of ascertaining what cases would be tried during the term. In *Long* v. *The State*, 52 Miss. 23, this court holds that it is a dangerous exercise of judicial discretion to refuse a continuance where the affidavit alleges material facts, and where due diligence is shown ; and the affidavit avers that the same proof cannot be made by any other witness. The court adopted Stevenson's opinion as to his fitness to sit on the trial ; and under sect. 3072, Rev. Code 1880, overruled defendant's challenge for cause. The Constitution of this State guarantees the right of trial by jury in all criminal prosecutions. Art. I., sect. 7. A statute which authorizes a jury of less than twelve men, is void where the Constitution guarantees a jury trial. See 1 Bishop's Cr. Proc., sect. 761. And in the same volume, sect. 764, this author says : " The law has provided what shall be the qualifications of jurors, as carefully as what shall be their number. These qualifications are no more changeable by statute, than is the number of jurors who shall constitute a panel." Amongst the disqualifications, is bias in the juror's mind as to the guilt or innocence of the accused. If he has formed or expressed an opinion that the party is guilty, he is incompetent. *Ibid.*, sect. 771. See marg. note 2, referred to in that section, and 1 Bishop's Cr. Proc., sect. 772. The Constitution of this State, Art. I., sect. 7, not only guarantees the right of trial by jury, but it also provides that in all criminal prosecutions the accused shall have a right to be tried by an impartial jury of the county where the offence was committed. It was not shown that the witness (Dr. Sharpe) was dead, or was in-

sane, or was kept out of the way by the defendant, or that he was so ill as not to be able to travel. He was present in Natchez where the trial was being had; was walking about the streets and able to travel to the court-house, or elsewhere. According to Dr. Chase, his memory had become very bad. But it was not probably worse than the memory of Justice Parsons, who could testify nothing, from his own personal recollection, as to what had been sworn to by Dr. Sharpe before him. Dr. Sharpe could have been brought into court, and, if his memory had failed, he would have been permitted to refer to his former testimony to refresh his memory. But he would not, himself, be entitled to read to the jury a part of what is said to be his testimony before Justice Parsons. He could have referred to the memorandum, if he desired to do so for the purpose of refreshing his recollection as to the facts, and with his recollection thus refreshed, he would still have been required to state them orally to the jury, so far as they were known to him. The law would not permit him to testify by reading to the jury the memorandum spoken of, or any part of it. In the case of Crite v. The Commonwealth, decided in the Virginia Court of Appeals, and reported in 5 Va. L. J. 568, it was held that the testimony of a witness taken down in writing at a coroner's inquest, the witness having afterwards removed beyond the jurisdiction of the court, and whose presence could not be procured at the trial, could not be read as evidence on the trial of the accused. The same principle is recognized as law in Irving v. The State, 9 Texas Ct. App. 67. See syllabus of the cases reported in 2 Crim. Law Mag. 285. See Kean v. The Commonwealth, 10 Bush, 190. Rev. Code 1880, sect. 1483, authorizes the circuit judges to alternate and make temporary changes of their circuits, whenever public interests may require. Hon. Ralph North, judge, opened his court on the 3d of April, and continued to hold court until the following Saturday evening. On Monday, the 10th of April, Judge North was not present. Hon. J. B. Chrisman, judge of the Tenth District, appeared

and opened court, and continued to sit as judge thereof until the term expired by limitation. There was nothing to show that the "public interests" required these two judges to alternate. A circuit judge cannot hold court outside of his own district, unless expressly authorized by law. The authority is only given in cases where the public interests require the change. The reason why the change is required should appear of record. The mere will and pleasure of the judges do not authorize the change. The defendant was entitled to one entire day to examine the list of jurors, a copy of which was served on his counsel on the day of trial. The object of the delay is to give the accused time to examine the list and prepare his challenges. Under the statute, the regular jurors for the week must be called after exhausting the special venire, and it is as important to give the accused an opportunity to examine that list as to examine the list of special jurors. The court erred in refusing the delay asked for.

*James L. Harris*, for the State.

1. Application for a continuance was made after drawing of the special venire, upon no cause shown to have arisen thereafter, and its refusal was hence no error. Code 1880, sect. 3059.

2. The defendant's challenge to the juror John Stevenson, for cause, was properly overruled. This is conceded by counsel, if sect. 3072, Code 1880, be constitutional; but the constitutionality of that section is vigorously assailed, as conflicting with Art. I., sect. 7, of the Bill of Rights, which guarantees the accused an "impartial jury." In the great State of New York this want was long sadly felt, and in 1872 a remedial act was passed, of which ours is almost a *verbatim* copy. In the celebrated case of *Stokes* v. *The People*, its constitutionality was assailed, and after elaborate discussion, in a carefully considered opinion the objection was overruled and the statute sustained. Laws N. Y. 1872, chap. 475, p. 1113; *Stokes* v. *The People*, 53 N. Y. 164; *Jones* v. *The*

*People*, 2 Col. 351; *Cooper* v. *The State*, 16 Ohio, 328; *Staup* v. *The Commonwealth*, 74 Penn. 458; *O'Mara* v. *The Commonwealth*, 75 Pa. St. 427; *Bolba* v. *The People*, 80 N. Y. 484, 492; *Thomas* v. *The People*, 67 N. Y. 218; *Phelps* v. *The People*, 72 N. Y. 334; *Cox* v. *The People*, 80 N. Y. 500; Thomp. & Mer. on Jur., sect. 222, *et seq.*

3. Parsons, the justice of the peace, was properly permitted to read his memorandum of the testimony of Dr. Sharpe before him on the preliminary examination.

As to the general question whether testimony will be received as to what deceased or insane witness testified on former trial, see Cooley's Const. Lim., sect. 318; 1 Whart. Cr. Law, sect. 667; 1 Greenl. on Ev., sects. 163–166; Bishop's Cr. Proc., sects. 520–527; 1 Hale's P. C. 305, 306, 586; 2 Hale's P. C. 284. Upon the question whether a witness who has no recollection of the testimony, independent of his notes, may yet read the notes in evidence, see *Rhine* v. *Robinson*, 27 Pa. St. 30; *Clark* v. *Vorce*, 15 Wend. 193; *Jones* v. *Ward*, 3 Jones L. 24; *Rex* v. *Smith*, 3 E. C. L. R. 316, 318; *Smith* v. *Lane*, 12 Serg. & R. 84, 87; 2 Ph. on Ev. 918, note 587.

4. We find no error in the instructions. The fifth instruction is correct as far as it goes, and is not calculated to prejudice defendant. The court was under no obligation to add, "the sentence of the law is death," and this last instruction was not requested. See my brief in case of *Jim Woods* v. *The State*, now pending, upon this same point.

5. The exception to the jurisdiction of the court is not well taken. The fact of the interchange is evidence that in the opinion of the judges the public interest required it. The order made by Judge North clearly contemplates an interchange. The amendment of the minutes recites that the public interest required an interchange. This amendment was made not for the purposes of this case merely, but for all cases, and the presence of the prisoner was not required.

CHALMERS, J., delivered the opinion of the court.

The motion for a continuance on account of the absence of the witness came after the special venire had been drawn, and upon the day fixed for going into the trial. It was not shown that the witness was present when the venire was drawn, and had subsequently absented himself. He had been summoned many months before, and, so far as the record shows, had never been present at any time, though the case had twice been continued from a former term, and had at this term been twice set for trial on special days. Sect. 3059 of the Code of 1880 prohibits continuances after the drawing of a special venire for causes existing before the drawing, except upon good cause shown. No cause was here shown. If the indictment had been newly found, so that the accused had not had time before the drawing to ascertain the importance of the witness, or the witness had never been subpœnaed, or any unexpected accident took the party by surprise and these things were shown to the court, the requirements of the statute would be met; but nothing of the sort has been attempted. Where the absence exists at the time of the drawing of the venire, the witness being at the time under a legal duty to attend, and the drawing is allowed to proceed without notice to the court, or any step taken by its order or leave to avoid the operation of the statute, and no subsequent showing of good cause is made, the statute imperatively denies a continuance.

It was not necessary that the record should recite that Judge Chrisman had interchanged circuits with Judge North, " because the public interests required it." It did recite that he was holding the court by interchange with Judge North, and this was sufficient. Being duly authorized to do this when the public interests require it, and he and Judge North being the sole judges as to this, the presumption must be that they had determined that the public necessity existed. Such determination by them cannot be assigned for error.

The action of the court in declaring the proffered juror, Stevenson, competent, and thereby forcing the defendant to

challenge him peremptorily, constitutes no ground of reversal, if conceded to be erroneous.  Defendant obtained an impartial jury without exhausting his challenges, and, therefore, was not damnified by the action of the court in any event, as has been several times decided.  *Brown* v. *The State*, 57 Miss. 425, and cases cited.

The same thing may be said in reference to the reading before the jury, by the justice of the peace, of the memorandum made by him of the testimony delivered before the committing court by Dr. Sharpe.  The testimony related solely to the wound inflicted by the defendant on the deceased.  The character of the wound was of no sort of importance, save as showing that it was the cause of death; and that deceased did die of the wound in less than an hour after it was inflicted is conclusively shown, independently of Dr. Sharpe's testimony, and was, indeed, a fact not questioned by anybody.  The testimony, therefore, whether admitted or excluded, could not have affected the result.

The defendant was not entitled to be served with a list of the regular venire for the week one entire day before he was put upon trial.  This requirement of the statute relates alone to the special venire.  There was no error in the instructions.

Judgment affirmed.