UNION & PLANTERS' BANK & TRUST CO. *v.* RYLEE.
RYLEE *v.* UNION & PLANTERS' BANK & TRUST CO.

[94 South. 796. No. 22757.]

1. EXECUTORS AND ADMINISTRATORS. *C aim against estate, although duly* *probated and registered; must be proved by competent evidence.*
   In a proceeding to establish the validity of a claim probated against the estate of a decedent, the claim, although duly probated and registered, must be proved by competent evidence.

2. MONEY PAID. *One cannot make himself creditor of another without his* *consent.*
   No man can make himself the creditor of another by paying that other's debt against his will or without his consent, or at least without some act on his part which will prevent him from withholding consent.

3. EVIDENCE. *Agent's admission of correctness of account against principal not binding unless made within scope of agent's authority.*
   An agent's admission of the 'correctness of an open account against his principal is not binding on the principal unless the making of the admission was within the scope of the agent's authority.

4. EVIDENCE. *Hearsay testimony inadmissible if objected to.*
   Hearsay testimony is inadmissible in evidence if objected to.

5. APPEAL AND ERROR. *Judgment or decree not reversed for admission of incompetent when supported by other and competent evidence.*
   A judgment or decree will not be reversed for the admission of incompetent, when supported by other and competent evidence.

APPEAL from chancery court of Tallahatchie county.
HON. G. E. WILLIAMS, Chancellor.
Suit by the Union & Planters' Bank & Trust Company, executor of A. J. Rylee, deceased, against Thomas Rylee

and John N. Rylee. From decree for plaintiff against John N. Rylee, and denying relief as against defendant Thomas Rylee, plaintiff and John N. Rylee, appeal. Reversed in part and affirmed in part.

*Lester G. Fant,* for appellant.

The supreme court does reverse the chancellor's finding of facts when the chancellor's findings are not borne out by the evidence. *Mallory* v. *Walton,* 119 Miss. 396. It is universally conceded that evidence to show an intention of the parties to a contract cannot prevail if directly contrary to the plain sense of the words employed. *Lewis* v. *Tipton,* 75 Am. Dec. 498.

The above rule is applicable to bills and notes, that is, when an agreement is reduced to writing it is deemed a merger and overcomes all prior or contemporaneous negotiations and declarations on the subject and that no old evidence is admissible to contradict, vary, explain, modify or in any way to add to or subtract from the terms of the instrument. *Park* v. *Thomas,* 13 S. & M. 11; 50 Am. Dec. 135; *Guthrie and Western R. R. Co.* v. *Rhodes,* 21 L. R. A. (N. S.) 490; *Cochran* v. *Zachary,* 16 L. R. A. (N. S.) 235; *Adams* v. *Wilson,* 45 Am. Dec. 240; *Smitler* v. *Simon,* 114 N. Y. 176; *Central Savings Bank* v. *O'Conner,* 94 N. W. 11; *Wright* v. *Moss,* 69 Am. Dec. 291.

The principle of law is clear that where promises are ambiguous the promissor cannot, by parole proof, relieve himself from the obligation of it by contradicting or explaining it. *Hobart* v. *Dodge,* 25 Am. Dec. 214. If Andrew J. Rylee were alive he would be estopped to deny the validity of this note, and the only way he could meet this would be to show that there was no consideration for it, or that there was a payment.

*Sivley, Evans & McCadden,* for appellant.

Under the practice in Mississippi prior to the statutory enactments, a claim against the estate of a dead man was

theoretically presented to the personal representative of his estate wherever it appeared of record, or where the facts were so notorious that the executor or administrator was charged with the knowledge of the existence of the claim.   This, however, has been entirely changed by statutory provisions, and the method now provided for is set forth in Hemingway's Mississippi Code, section 1774, and the Mississippi Code of 1906, section 2106, as follows:

"How claims probated.—Any person desiring to probate his claim shall present to the clerk the written evidence thereof, if any, or if the claim be a judgment or decree and duly certified copy thereof, or, if there be no written evidence thereof, an itemized account, or a statement of the claim in writing, signed by the creditor, and made affidavit, to be attached thereto, to the following effect, viz: That the claim is just, correct, and owing from the deceased; that it is not usurious, and that neither the affiant nor any other person has received payment in whole or in part thereof, except such as is credited thereon, if any.   Thereupon, if the clerk shall approve, he shall indorse upon the claim the words following:/ 'Probated and allowed for $—— and registered this —— day of —— A. D. 19—, and shall sign his name officially thereto.   Probate, registration, and allowance shall be sufficient presentation of the claim to the executor or administrator."

It will be noted that under this section of the Code that claims are required to be probated as follows: First, written evidence, if any, shall be presented to the clerk; second, a judgment or decree shall be probated by a duly certified copy thereof; third, if there be no written evidence, then an itemized account, or statement of the claim in writing.   Under all of the foregoing provisions the creditor must sign the evidence of the claim and make affidavit to the same, as provided in the statute.   When all of the foregoing provisions have been complied with, then the clerk must approve and indorse on the claim that the same has been probated, allowed and registered, and sign the same officially.   After the full statutory requirements have

been performed by the creditor, then such probation, registration and allowance shall constitute sufficient presentation of the claim to the executor or administrator.

THE CLAIM WAS NOT PROPERLY PROBATED AS PROVIDED BY LAW. It is manifest by examination of the claim as probated, and the evidence offered upon the trial, that claimant has flagrantly disregarded the plain provision of the Code with reference to probating claims against the estate of a decedent. Then, again, the claimant did not introduce evidence that even a suit had been instituted by either Pease & Dwyer or the Union & Planters Bank & Trust Company, nor does it show that there was an assignment of either of said judgments by the owner of the same. The judgment record was not introduced upon the trial of the case, nor was any evidence whatever offered to show that Thomas Rylee was subrogated in any wise to the rights of the alleged judgment creditors.

If Thomas Rylee actually paid these judgments, he does not show that there was any obligation on his part to pay them, and certainly he cannot be heard to assert a right against the estate of A. J. Rylee where he merely volunteered to liquidate an indebtedness evidenced by the alleged judgments. The claimant is, therefore, in the attitude of either volunteering to pay the debt of another, or, he purchased the judgments so recovered without taking any assignment of the same. In either event, he cannot be heard to assert his claim against the estate of the dead man under such conditions.

This Code provision has been before this court for construction upon several occasions. In the case of *Chears* v. *Chears,* 81 Miss. 662, the court held this statute to be mandatory, and that on affidavit in support of a claim which did not fully comply with the statute gave no validity whatever to the probate of such claim. *Walker* v. *Nelson,* 87 Miss. 268; *Lehman* v. *George,* 88 Miss. 798; *Cudahay & Co.* v. *Miller,* 103 Miss. —; *McMahon* v. *Foy,* 104 Miss. 309; *Persons* v. *Griffin,* 112 Miss. 643.

In this case it was also held that the court had no right to assume the justness or correctness of such claim, and should not inquire into its equity and good faith where such claim had not been properly probated. *Rogers* v. *Rosenstock*, 117 Miss. —. From the foregoing decisions, it is manifest that this pretended probate of the claim of Thomas Rylee did not meet the requirements of the mandatory statute, and the motion made to exclude the same should have been sustained.

THERE WAS NO EVIDENCE TO SUSTAIN THE CLAIM. Under assignment of errors, 1, 3 and 4, the question of sufficiency of evidence to sustain the claim is fully raised. The only witness introduced by claimant was John Rylee, his son, and through him a check on the Central State National Bank was offered in evidence, which on its face appeared to be payable to Sheriff Brown. John Rylee knew nothing about the payment of the check, nor did he know whether it was given in payment of the judgments. The only thing that he knew was what appeared upon the face of the check. The court admitted the check over the objection of the executor upon the assurance of counsel that it would be connected up by other evidence.

As the record stands there is no evidence to show that Brown was ever sheriff, or that the check was ever delivered to him, or that the money was ever received thereon, or that the judgments were ever, in fact, paid and satisfied. Indeed, there isn't the slightest semblance of evidence in this record, to justify the assumption that a judgment was recovered in either of the alleged suits, or that Thomas Rylee paid the same, nor is there any evidence of the fact that an assignment of the judgments was ever made to Thomas Rylee, nor is there any evidence whatever to show that he was in any way subrogated to the rights of the judgment creditors. If as a matter of fact he actually paid said judgments, then he was purely a volunteer in making such payment, for there was no legal obligation upon his part to pay the debts of his brother.

When the chancellor allowed this claim, he stated very frankly that it had not been properly established, but that on the face of it there might be some equity in favor of the claimant, but it has been expressly held by this honorable court that if a claim is not properly probated against the estate of a dead man and is not fully established by the proof, that you cannot look to the equities of the situation for the lower court is bound absolutely by the probate of the claim and the evidence offered when it is in dispute. *North* v. *Lowe,* 63 Miss. 31.

Conclusion. We insist that this claim should be denied and ask the court to enter a judgment here dismissing the claim because of the fact that the time limit within which to probate the claim has long since expired, and a reversal would accomplish nothing except to add additional expense to the estate. This court has held that you cannot amend a claim which was not properly probated after the statutory limitation has expired. In view of the foregoing we ask for a dismissal of the claim based upon the following reasons:

1. Because the claim was not properly probated, as there was no certified copy of the judgments presented to the clerk when the claim was probated. 2. There was no evidence whatever to show that Thomas Rylee ever paid the judgments. 3. There was no evidence to show that any suit was ever instituted by either Peas & Dwyer or the Union & Planters Bank & Trust Company. 4. If such judgments were recovered and Thomas Rylee actually paid them off, there was no assignment of the judgment creditor's interest to him. 5. There was nothing in the record to show that Thomas Rylee was in any way subrogated to the rights of the judgment creditors. 6. A. J. Rylee lived more than two years after it was claimed that these judgments were paid off and yet no evidence to show that Thomas Rylee ever presented the claim to him and demanded payment of the same.

The chancellor was manifestly in error in allowing the claim without sufficient proof to establish it.

*Wall Doxey,* for appellee.

There is no contention on behalf of appellant that the claim isn't just, correct, and owing unto appellee, Thomas Rylee; that it isn't properly itemized, signed, sworn to, probated, allowed and registered, as required by law, but appellant denies liability on the ground that these recorded facts, forms and figures fail to establish the claim of appellee against said estate. Appellant states that the claim is just an open account and no proof substantiating it; that they were not judgments because there was no proof offered to show that any suit was instituted, etc.

We respectfully submit that the claim as probated speaks for itself. Appellee deems it idle and wholly unnecessary to enter into a lengthy discussion of this matter. Suffice it to say that the various authorities cited and discussed by appellant in his brief filed herein are not in point and that the facts in this case at bar are entirely different from those recited in the various cases relied upon by appellant to substantiate his contention in the case at bar. The affidavit in support of the probated claim filed herein fully complies with the requirements of the statute. The probated claim and also the affidavit is properly signed by appellee, Thomas Rylee, in his own proper right. There is no question of agency or omission of any formalities, shown by the record of the instant case. The claims were properly itemized and marked by the clerk as required by statute. This record plainly shows that appellee did all that was required of him to establish his claim against said estate.

It cannot be claimed with any degree of satisfaction that appellee was a mere volunteer in paying out his money for the benefit of his brother, A. J. Rylee, when this record shows that although the power of attorney was mutually cancelled on June 2, 1916, yet the said appellee continued to aid and assist his brother in managing and financing his affairs; his services were accepted and recognized and he was in a measure paid for same as shown by (Tr. 76,

and 232) where appellee was allowed one thousand six hundred and forty dollars, being the balance due for services rendered to the date of June, 1918.

There was not one scintilla of proof offered by appellant to disprove payment or authority to pay on behalf of appellee or of the benefits resulting to A. J. Rylee thereby. The check, with the notation thereon, offered by appellee in evidence was in no wise questioned and conclusively shows that Peas & Dwyer held a judgment against A. J. Rylee during his lifetime in the sum of two hundred and twenty-four dollars and three cents, and so did the Union & Planters Bank & Trust Company in the sum of two hundred and seven dollars and sixty cents, and that appellee, Thomas Rylee, during the lifetime of his brother, A. J. Rylee, (March 14, 1917), paid off said judgments for deceased and thereby released and relieved the said A. J. Rylee and his estate from liability on said judgments, said payment being made by a check aggregating the total amount of both judgments, to-wit: four hundred and thirty-one dollars and sixty-three cents, and therefore instead of two said judgments standing against the said A. J. Rylee there only existed an account in the total sum advanced by the said appellee, Thomas Rylee, which advancement was made in order to relieve his brother, A. J. Rylee, of the effect of the said judgments, and at a time when the said A. J. Rylee was to a very grave extent financially embarrassed, as this record unquestionably shows.

The very purpose of appellee in paying off these judgments for his brother A. J. Rylee, was that they should lose their identity and effect as judgments, and that in their stead there was only to be a debt due appellee by A. J. Rylee. It is not claimed by appellee that these judgments were assigned to him; that he "stepped in the shoes," so to speak, of the judgment creditors. He advanced the lump sum to get rid of the judgments. Should appellee, Thomas Rylee, have even been forced to sue his brother for this debt, he would not have insisted, nor could he, that he was subrogated to the rights of the judgment credi-

tors.   He would have brought an action in debt, and not until he secured a judgment thereon, could he have ever held a judgment in this behalf against A. J. Rylee.   Appellee was in no wise concerned with how and for what items these judgments were obtained.   The fact was that they were secured and were enrolled upon the records of Tallahatchie county against A. J. Rylee in favor of the respective judgment creditors, Pease & Dwyer and the Union & Planters Bank & Trust Company, and that Thomas Rylee paid them off, each judgment as an entirety as set forth and represented by his probated claim.

All the argument and law cited by appellants, with reference to certified copies of judgments, suits instituted showing how and for what these judgments were obtained, the assignment of same and the subrogation of the rights of the parties, etc., is in no wise germane to the issue involved in this case.

The only issue presented by this record in this case is, that although and without dispute, the record shows the judgments existed, that they were paid off by appellee, Thomas Rylee, who claimed no rights by virtue of said judgments, but probated his claim as a debt due, and referred to the judgments showing for what, how, and when the sum claimed by him was expended on behalf of A. J. Rylee, yet the appellant denied liability generally but introduced no evidence whatever even tending to show and to support their contentions in this behalf.

Therefore, it is most earnestly urged that the decree of the chancellor in this case is eminently correct and that this cause should be affirmed.

SMITH, C. J., delivered the opinion of the court.

A. J. Rylee died on April 10, 1919, leaving a will in which the Union & Planters' Bank & Trust Company was nominated as the executor thereof.   Among the claims probated against Rylee's estate were two by Thomas Rylee, a brother of the decedent, and two by J. N. Rylee, a son of Thomas

Rylee and a nephew of the decedent. The executor contested the validity of these claims, and their validity was submitted to the court below, resulting in a decree allowing one of the claims probated by Thomas Rylee and disallowing the others, from which there is an appeal both by the executor and by J. N. Rylee, Thomas Rylee not appealing from the disallowance of one of his claims. The pleadings on which the validity of these claims were presented to the court for decision were lost, but from an agreement entered into by counsel it appears that the statutory method of contesting claims against a decedent provided by section 2108, Code of 1906 (Hemingway's Code, section 1776), was not followed, but that their validity was presented to the court below by an original bill by the executor against the Rylees and an answer and cross-bill by the Rylees, and an answer to his cross-bill by the executor.

The claim of Thomas Rylee against the estate as set forth in the probated record thereof is as follows:

"A. J. Rylee, Deceased, in Account with
Thomas Rylee, Dr.

"March 14, 1917, to Pease and Dwyer judgment, paid in cash, two hundred and twenty-four dollars and three cents.

"March 14, 1917, to judgment *Union & Planters' Bank & Trust Company* v. *A. J. Rylee,* paid in cash, two hundred and seven dollars and sixty cents—total amount paid, four hundred and fifty-one dollars and sixty-three cents.

"The above judgments, *Pease and Dwyer* v. *A. J. Rylee et al.,* and *Union & Planters' Bank & Trust Company* v. *A. J. Rylee et al.,* were recorded in Tallahatchie county, Miss., on judgment roll of said county, and the same were paid by Thomas Rylee on the 14th day of March, 1917.

THOMAS RYLEE."

This statement of the claim was sworn to by Rylee and allowed by the chancery clerk in accordance with the statute. In support of this claim Thomas Rylee introduced the probated record thereof, and then introduced his son, J. N. Rylee, who identified a check reading as follows:

"Memphis, Tennessee, 3/14/1917.

"Central State National Bank: Pay to the order of P. H. Brown, sheriff, $431.63, four hundred thirty-one and sixty-three dollars, for judgments Pease and Dwyer v. A. J. Rylee and Union Trust Bank v. A. J. Rylee.

[Signed]   THOMAS RYLEE."

Whether this check was ever indorsed and collected by the payee therein does not appear. The witness was then asked if he "knew what the check was given for," to which he replied, "No more than what the check itself shows." No evidence as to this claim was introduced by the executor.

The executor's contentions as to said claim are: First, that it was not properly probated; and, second, that it was not established by the evidence. We will pretermit any discussion of the first of these objections and dispose of the claim on the second.

"A claim against the estate of a decedent, although duly probated and registered, must be established by competent evidence if objected to by the administrator." *North, Administrator,* v. *Lowe,* 63 Miss. 31.

The evidence offered in support of the claim here under consideration amounts to practically nothing.

It does not appear therefrom that the judgments for the payment of which reimbursement is here claimed in fact existed, that the payee in the check was the sheriff, and as such was authorized to collect the judgments by execution or otherwise, nor that the check was collected by him. Moreover, in order for the claimant to be entitled to recover money paid by him in settlement of a judgment against the decedent, he must have paid it at the request, express or implied, of the decedent, for:

"No man 'can make himself the creditor of another by paying that other's debt against his will or without his consent,' or at least without some act on his part which will prevent him for withholding consent." Clark on Contracts (3d Ed.), p. 627; Hammon on Contracts, p. 869; *Walker* v. *Harrison,* 75 Miss. 665, 23 So. 392.

The two claims probated against the estate of J. N. Rylee consist, one of an open account against the estate in favor of Thomas Rylee, and assigned to J. N. Rylee, and a promissory note for six thousand three hundred dollars executed by the decedent and payable to J. N. Rylee, and due November 15, 1917. The probated statement of the open account begins, "A. J. Rylee, debtor to Thomas Rylee," and, after setting forth a number of debit and two credit items, continues as follows:

"1918.

| | | |
|---|---|---:|
| January 13. | Bal. Brought forward from 1917 ..$ | 5.93 |
| March 10. | To expense Tutwiler and return .... | 10.00 |
| April 26. | To expense Tutwiler and return .... | 10.00 |
| June 13. | Balance due for services up to date .... | 1,640.00 |

Balance due to date ................... $1,665.93

"I hereby approve the above account and agree that same shall bear interest from date until paid June 6, 1918.

[Signed]    A. J. Rylee.

"By W. J. Rylee, Agent."

Indorsed on back thereof:

"Pay to John N. Rylee, without recourse on me.

[Signed]    Thomas Rylee."

The statement of this amount was not signed by any one, and was sworn to by J. N. Rylee,. The only evidence offered in support of the account was a power of attorney executed by A. J. Rylee to his son, W. J. Rylee, in January, 1917, being as follows:

"I, A. J. Rylee, constitute and appoint W. J. Rylee my legal agent and, attorney in fact to collect and receipt for any and all rents due me in the town of Tutwiler, Miss., and to transact all legal business pertaining to my property and interest in the said town and until this authority is revoked by me."

W. J. Rylee testified that he made the notation on the account approving it, but that he did so at the request of his uncle, Thomas Rylee, but knew nothing whatever as to its correctness *vel non* himself.

Several objections are made by the executor to the manner in which this account was probated, but we will pretermit any discussion thereof, for the reason that it does not appear that any item of the account relates to any property or interest of the decedent in the town of Tutwiler, and consequently the approval of it was not within the scope of the authority conferred upon J. W. Rylee by the power of attorney executed to him by the decedent. The court below committed no error in disallowing it.

In support of the promissory note probated by him J. N. Rylee proved the signature of the decedent thereto, and then introduced it and a deed of trust securing it in evidence. The executor then introduced evidence to the effect that in January, 1915, the decedent, being indebted to Thomas Ryle in the sum of one thousand dollars, executed to him a promissory note therefor secured by a deed of trust on the property afterward included in the deed of trust hereinbefore referred to to J. N. Rylee, and also executed to Thomas Rylee a full power of attorney for the management of the decedent's business; that on February 7, 1915, the decedent executed a promissory note to J. N. Rylee in the sum of three thousand five hundred dollars securing it by a deed of trust on the property included in the two deeds of trust herein before referred to. The note to J. N. Rylee for six thousand three hundred dollars here sought to be collected was executed on Juy 12, 1915.

The evidence for the executor further discloses that on June 2, 1916, Thomas Rylee and the decedent had a final settlement embodied in a written agreement signed by each by which the power of attorney theretofore executed by the decedent to Thomas Rylee was revoked, and reciting that "all moneys due to either party by the other have been paid," and that—"This instrument is intended as a complete settlement and adjustment of any and all business matters, and accounts heretofore existing between the said parties, and as a mutual acquittance, release, and discharge of each party from any liability to the other."

W. J. Rylee testified on behalf of the executor that the six thousand three hundred dollars note here in question was paid by the decedent to Thomas Rylee, and, over the objection of the claimant, J. N. Rylee, that Thomas Rylee had told him, the witness, that the decedent did not owe J. N. Rylee anything; that the note executed by the decedent to J. N. Rylee for three thousand five hundred dollars was to cover the one thousand dollar note executed by the decedent to Thomas Rylee and advances made to the decedent by Thomas Rylee, and that the reason that it was made payable to J. N. Rylee instead of to Thomas Rylee was that he (Thomas Rylee) had been advised by his attorney that the note ought not to be made payable to him (Thomas Rylee) because of the fiduciary relations then existing between him and the decedent, and that the six thousand three hundred dollar note to J. N. Rylee was executed to cover the three thousand five hundred dollar note and advances made by Thomas Rylee to the decedent, and was made payable to J. N. Rylee instead of to Thomas Rylee for the same reason that the three thousand five hundred dollar note was made so payable; that Thomas Rylee told him (the witness) that everything was settled between him and the decedent.

J. H. Cook, an attorney at law, was permitted to testify on behalf of the executor and over the objection of the claimant that he was present at a conference between the decedent and Thomas Rylee in which the decedent stated and Thomas Rylee admitted that he (the decedent) did not owe J. N. Rylee anything, and that the decedent dictated to him (Cook) a letter to J. N. Rylee to that effect, which letter was mailed to J. N. Rylee, but was not answered by him. Cook also produced on cross-examination and at the request of counsel for the claimant read a letter which he had written to the claimant on November 10, 1918, stating that the deed of trust securing the six thousand three hundred dollar note had not been canceled, and, inasmuch as the note had been paid, he as the representative of A. J.

Rylee, would request the claimant to cancel it. This letter was not answered.

The decedent died in a hospital in Memphis, and one of the nurses who attended him there testified that J. N. Rylee visited him at the hospital, and the decedent then said to him in her presence, "John, I understand you are claiming an indebtedness against me, and I want to know what it is for and why I owe you anything?" to which John replied, "You do not owe me anything," and wanted to know where he got the information that he owed him anything, and that "He did not see any reason why he had that idea, as he did not owe him anything at all." This witness further testified that when J. N. Rylee left the decedent's room she accompanied him into the hall, and, in the language of the witness:

"He asked me in regard to his uncle's health and present condition, and he wanted to know who told Capt. Rylee that he was claiming an indebtedness against him, and wanted to know where he got the information from, and stated that he did not owe him anything, and that he did not see why Capt. Rylee should owe him or any one else anything with the capital that he had."

The deeds of trust securing the one thousand dollar note to Thomas Rylee and the three thousand five hundred dollar note to J. N. Rylee were, but the deed of trust securing that six thousand three hundred dollar note was not, canceled by a notation on the record thereof to that effect. No demand was made on the decedent during his lifetime by either Thomas or J. N. Rylee for the payment of the six thousand three hundred dollars. That the deed of trust securing the six thousand three hundred dollar note had not been canceled was discovered by J. N. Rylee and reported to the decedent.

The claimant then introduced Thomas Rylee, who testified at great length, and, while his testimony abounds in contradictions, when taken as a whole it warrants the belief that he advanced the money to the decedent, to cover which all three of the notes hereinbefore referred to were

given, and that in having the notes made payable to J. N. Rylee he was, in the language of the witness, simply "using his name."

The testimony of the witnesses W. J. Rylee and Cook that was objected to as hereinbefore set forth, should not have been admitted, it being pure hearsay. The error committed by its admission, however, will not necessitate the reversal of the decree, for the reason that it is fully supported by other competent testimony, to-wit, the admission made by J. N. Rylee to the decedent and the nurse at the hospital that the decedent did not owe him anything, his failure to reply to Cook's letter requesting him to cancel the deed of trust, his making no demand for the payment of the note until after the decedent's death, and the deductions which the court below was warranted in making from the testimony of Thomas Rylee as hereinbefore set out.

A judgment or decree will not be reversed for the admission of incompetent, when supported by other and competent, evidence. *O'Leary* v. *Burns,* 53 Miss. 171; *Rothschild* v. *Hatch,* 54 Miss. 554; *Fletcher* v. *State,* 60 Miss. 675; *Penn* v. *State,* 62 Miss. 450; *Board of Levee Commissioners* v. *Lee,* 85 Miss. 508, 37 So. 747.

The decree of the court below will be reversed in so far as it allows the claim probated by Thomas Rylee, but in all other respects will be affirmed.

*Reversed and remanded as to Thomas Rylee;*
*Affirmed as to J. N. Rylee.*