## Toof, Phillips & Cirode *v.* J. J. Duncan.

1. Partnership — Special Agreement — Power of each Partner in an "Adventure."—A written contract of partnership in an "adventure" limited to specified transactions in a single article of trade for three months, does not give to the parties such power to bind the firm as is possessed by partners in cases of permanent and general mercantile transactions.

2. Same — Case in judgment. —T., P. and C. constituting a firm, entered into a written agreement with F. to engage in shipping and selling cotton for the period of three months. In December, 1864, F. was in Washington county, Mississippi, on a trading expedition under this contract, and D., a resident of Greenville, who had notice of the agreement between T., P. & C. and F., asked F. to take up to Memphis a draft on a firm there and collect for him, and bring the money down, and handed F. a draft on C., N. & S., of Memphis, drawn in favor of F., who took it to Memphis and indorsed it to T., P. & C., requesting them to collect it and place the proceeds to his credit, which was

done, and subsequently the money was withdrawn by F., who failed to pay it over to D. : *Held,* that T., P. & C. were not liable to D. for the proceeds of the draft.

Error to the circuit court of Washington county. Trimble, J.

The opinion of the court minutely states the facts of this case.

*Harris & Withers,* for plaintiffs in error.

It is manifest that there was no sufficient ground for a judgment against plaintiffs in error.   The evidence not only fails to establish the fact that Frazier, to whom the money was loaned by defendant in error, was a partner in the commercial firm of Toof, Phillips & Cirode, *but establishes exactly the reverse.*   The firm of Toof, Phillips & Cirode only agreed to take an interest in *a certain specific adventure with Frazier.*   No authority is given in the articles of agreement to either party to borrow money, but the plaintiffs in error and Frazier were each to contribute "an equal amount of capital."   The whole object and scope of the adventure was for the purpose " of shipping and selling cotton" and the purchase of a boat for that purpose.

It is distinctly proven by Moses Johnson, a witness for the defendant in error, that the order for the money was given to Frazier and "that Frazier told Duncan if cotton did not raise before he got back to Memphis *he* would like to have the use of the money until the first of April," and that Duncan (the defendant in error) told Frazier "*yes, he could use the money if he would return it as promised,*" and that nothing was said by Frazier about his being a partner of plaintiffs in error.   This proof introduced by defendant in error on the trial is conclusive against his recovery of plaintiffs in error.   The loan was negotiated by Frazier in his own name and for his own benefit.   The deposition of Mahan and Walter Scott, book-keeper for plaintiffs in error, show that the money was merely collected by Mahan for Frazier,

who was then sick, and was paid over to him on his recovery. The order of the defendant in error on Campbell, Norrel & Shepherd, is to pay the money to Alexander Frazier, not to plaintiffs in error. This order shows that the loan was to Frazier as an individual. Even had Frazier been a partner in the commercial firm of Toof, Phillips & Cirode, his borrowing money on his individual account would not have bound the firm. But he was not a partner, but had he been, the order is to him as an individual and as he received the money as an individual and so used it, the firm having no benefit from it, they could not be held responsible.

1. War was raging between the north and south at the time, and the contract between Frazier, who came from the north and from a point in possession of the United States forces, and Duncan who was in Mississippi, was illegal and void by the law of nations, and especially by the acts of congress.

2. The demurrer to the declaration should have been sustained, for if Alexander Frazier was a partner of the firm of Toof, Phillips & Cirode, he should have been made a party defendant.

3. The demurrer should have been disposed of in some way before defendants below were forced to plead. The record fails to show what action the court took on the demurrer.

4. The verdict of the jury was contrary to the evidence. There was really no evidence that plaintiffs in error were liable for Frazier's debt.

5. It was error to permit the introduction of the written agreement under the circumstances of the case.

No counsel for defendant in error.

Tarbell, J.:

In December, 1864, Toof, Phillips & Co., and Alexander Frazier, residents of Memphis, Tenn., entered into a written agreement, beginning thus: "This article of agreement

made and entered into by and between John S. Toof, Charles I. Phillips, W. T. Cirode, and Frank M. Mahan, composing the firm of Toof, Phillips, & Cirode, of the first part, and Alex. Frazier of the second part." The object of this contract is stated therein to be, "for the purpose of shipping and selling cotton as per regulations of United States purchasing agent." It is then recited, "that the party of the first part agrees to furnish an equal amount of capital with the party of the second part, in goods and supplies not contraband of war, or of such a character as the authorities may permit to be shipped to parties that may furnish cotton in this adventure." It is also provided, that "the boat furnished by either party in this adventure to be paid for by each party equally, and to be owned and controlled in the same way. All expenses incurred in getting cotton, shipping and selling the same, to be borne equally alike, and all profits and losses in this adventure to be shared alike by and between both the above-named parties." The cotton obtained under this contract was to be shipped to the place of contract, and "reported to the United States purchasing agent," and to be sold to him, or sent to the loyal states for sale. "The party of the first part not to be liable for any cotton until the same has been delivered on board the boat used in this adventure." Just and true accounts were to be kept, and neither party was to "do any thing whereby the rules and regulations of the United States authorities shall in any manner be infringed or violated." This contract was to continue for three months, subject to cancellation by either party on two weeks' prior notice.

In December, 1864, or January, 1865, Frazier being in Washington county, Miss., on a trading expedition under the foregoing contract, J. J. Duncan, a resident of Greenville, in that county, the plaintiff in this action, "asked him (Frazier) to take up a draft on Campbell, Norville & Co., to Memphis, and collect for me (Duncan), and bring the money down."

Duncan then, under date of January 31, 1865, gave to Frazier a check, or draft, on Campbell, Norville & Shepherd, directing them to pay to Alex. Frazier $1,500.

Frazier, being sick and unable to attend to the collection of this draft, indorsed it, payable to Toof, Phillips & Cirode, and, at the request of Frazier, one of the firm of Toof, Phillips & Co., collected thereon of Campbell, Norville & Shepherd, $1,492 50, which sum was placed to the credit of Frazier on the books of Toof, Phillips & Co., and by Frazier subsequently withdrawn from deposit. Frazier failing to pay the money to Duncan, the latter, in August, 1865, sued Frazier to recover the amount, but withdrew the suit, and in 1867 brought this action against Toof, Phillips & Co., commencing by attachment, against Toof, Phillips & Cirode, as composing the firm of Toof, Phillips & Co., seeking to charge them with the payment of the sum collected of Campbell, Norville & Shepherd. The record is somewhat confused. The following papers appear in the order named :

1. Affidavit of Duncan for attachment against Toof, Phillips & Cirode, under date of November 2, 1867.

2. Bond for attachment against same parties.

3. Attachment against same parties, and sheriff's return of service upon debtors of Toof, Phillips & Co.

4. Declaration in circuit court of Washington county, May term, 1868, against Toof, Phillips, Cirode and Mahan, as partners in trade, under the firm name of Toof, Phillips & Cirode, alleging the draft on Campbell, Norville & Shepherd, and its payment to defendants "or to their partner, Alex. Frazier, who was authorized and empowered, as such partner, to receive payment of the same." With the declaration is a bill of particulars of plaintiff's claim, to wit:

"Toof, Phillips & Cirode,

                    To Jesse J. Duncan,          Dr.

1865. January.  To amount of draft, drawn
            by me in your favor on the house
            of Campbell, Norville & Co., and
            by them  paid you .............. $1,492 50."

5. May term, 1869, another declaration, not stated to be
filed as an amended declaration, yet, in fact, varying from
the former, in this, that it declares against Toof, Phillips,
Cirode and Mahan, as partners, and omits all mention of
Frazier.   This declaration contains the usual money counts
in assumpsit.

6. Plea, special plea, and replication between these
parties in the courts of Memphis, 1865.

7. Washington county, Mississippi, circuit, May term,
1869 ; plea, special plea, and replication in this action.

8. November circuit, 1868, a general demurrer to the
declaration.

9. May term, 1869, demurrer to the declaration, on the
ground that the declaration states Frazier to be a partner in
the firm of Toof, Phillips & Co., yet he is not made a party
to the suit.

10. An agreement of counsel to read depositions taken in
a suit in Tennessee between these parties for the recovery
of the same money claimed herein.

11. May term, 1869.   Proceedings on the trial in Wash-
ington county.

It will be seen that the parties went to trial with the
demurrer undisposed of as far as the record shows, the issue
being made up and the demurrer filed, and a trial had at the
same term of the court.

Our conclusion from the record is, that the demurrer, if
not disposed of by the court, was waived by the parties.
It, at least, deserves no consideration in this case.

Upon the trial the first witness sworn was the plaintiff in
the action, who testified that in the fall of 1864 he was at the

office of Toof, Phillips & Co., in Memphis, when he was shown the written agreement between that firm and Frazier, and was asked to use his influence to get them cotton.  He did not read the contract, but the arrangement was the subject of conversation between himself and one of the firm. On his return to Washington county, the witness says, "I met with Frazier sometime in the month of December, 1864, or January, 1865, and asked him to take up a draft on Campbell, Norville & Co. to Memphis and collect for me and bring the money down.  Frazier there represented himself as a partner of Toof, Phillips & Co., and said, that if they did not sell the cotton then on hand, they would like to use the money in the purchase of other cotton, and would pay ten per cent interest on it for the time they used it, as cotton was low at the time and they might not want to sell, but that if they sold said cotton they would not use it.  Frazier said that Toof, Phillips & Co. were good for it, and I loaned the money on the credit of the firm of Toof, Phillips & Co. I gave Frazier a check on Campbell, Norville & Co.  Just after the surrender witness demanded this money of Toof, Phillips & Co., which they refused to pay."  The articles of agreement between Toof, Phillips & Co. and Frazier were then offered in evidence, but were objected to on several grounds.  The objections being overruled, the defendant excepted, and the contract was read to the jury.

The testimony of several witnesses was then submitted to the jury, by deposition, or in person, in order to establish a general partnership between Toof, Phillips & Co. and Frazier. This proof consisted of the acts and declarations of Frazier in Washington county, mainly in reporting that he was interested in the best house in Memphis.  No proof appears showing that Toof, Phillips & Co. held out Frazier as their partner, or that his acts or declarations were ever brought to their knowledge.  In fact, the evidence not only fails to show Frazier a general partner of Toof, Phillips & Co., but establishes conclusively that their transactions were confined to and limited by the written agreement between them.  It

also appears that Toof, Phillips & Co. derived no benefit from the money sued for, nor did it enter into their business, but was held by them as the money of Frazier, and paid over to him on his demand. It also appears that Toof, Phillips & Co. were possessed of ample means, and were not borrowers.

The instructions of the court to the jury, for the plaintiff, are not given in the record.

The instructions asked by defendants were modified by the court, to which they excepted. The jury rendered a verdict for plaintiff, for $1,492 50, and judgment was entered against Toof, Phillips, Cirode and Mahan.

The defendants asked to have a new trial, on the following grounds: 1. Because the court erred in giving instructions asked by plaintiff; 2. Because the court erred in refusing the first instruction asked by defendants, and in modifying the others asked by them; 3. Because the court erred in permitting the written agreement between Frazier and defendants to be admitted as evidence; 4. The jury found contrary to the evidence; 5. The jury found contrary to the instructions of the court; and, 6. For other causes to be stated on the argument. The defendants' attorney also submitted an affidavit of surprise on the trial, by the introduction of the written agreement aforesaid.

The motion for a new trial was overruled, and defendants excepted, whereupon they prosecuted a writ of error, and the following causes are assigned here for a reversal of the judgment and verdict: 1. The court erred in overruling the demurrers to the declarations; 2. Neither the declaration nor amended declaration make Alexander Frazier a party, and no recovery could be had against a firm of which he was a member, for obligations incurred by him, without making him a party; 3. The verdict of the jury is contrary to the evidence; 4. The evidence shows that the verdict should have been for defendants below; 5. The court erred in permitting the introduction of the written contract or agreement between plaintiffs in error and Frazier, as evidence

for the jury ; 6. The court erred in refusing the instructions asked by plaintiffs in error ; 7. The court erred in modifying the charges asked by plaintiffs in error ; 8. The court erred in granting the instructions asked by defendant in error ; 9. The court erred in overruling the motion for a new trial.

Our view of this case renders it wholly unnecessary to discuss but a single point, and that quite briefly.    The written agreement between defendants and Frazier, which plaintiff saw, or might have seen, limited their transactions to a single article of merchandise, for the period of three months. While it was to a certain extent a partnership, it was, nevertheless, only an "adventure."    Such an enterprise, though a partnership, gives to the respective partners no such ample powers to bind the firm as in cases of permanent and general mercantile transactions.    In this case there was no power to borrow money, and it could not be implied, except in a case of clear emergency, and in the direct and proper conduct of the enterprise.    No such necessity is presented.    In fact no occasion whatever for borrowing money is shown.

Neither does the contract permit of any transactions outside of the special adventure, and one of the partners could not bind the firm except in the legitimate prosecution of the enterprise and necessary to its success.

In the case at bar, Duncan swears he "loaned the money on the credit of the firm of Toof, Phillips & Co.," but in fact he gave the check or draft on his merchant for money payable to the order of Frazier, and not to Toof, Phillips & Co., which Frazier was to collect and "bring down" to the plaintiff.    Had the latter taken the precaution to have drawn the draft payable to the order of Toof, Phillips & Co., it might have changed the whole aspect of the case.    But he dealt with Frazier alone ; he made the draft payable to Frazier's order, and the latter was to collect and bring the money to Duncan.    We regard the former as the mere agent of the latter in a mere accommodation transaction, outside of, and wholly unauthorized by, the agreement between Frazier and

Toof, Phillips & Co. The credit, the party testifies, he gave to the firm, and that in his own mind he did so need not be doubted, but by the actual transaction it was given in fact and in law to Frazier. Very likely the credit extended to Frazier was the reflected credit of the firm through their association with him in the adventure and by his further unauthorized representations; but we cannot perceive that they were in any way, morally or legally, involved in the transaction. Frazier, we judge, was willing to defraud either Duncan or Toof, Phillips & Co. The loss might have been avoided by the simple precaution of drawing the check payable to the order of the well-known firm of Toof, Phillips & Co., and we think the consequences ought to fall upon Duncan rather than upon these defendants. In short, we think the proof so clearly exonerates the defendants, and so positively establishes the sole responsibility of Frazier for the money in controversy, as to leave us no discretion. The law and the facts appear to be plain.

The judgment is reversed and the cause remanded.