SANDY WILSON v. MARY HOFFMAN ET AL.

[61 South. 699.]

TRUSTS. *Resulting trusts. Creation.*

Where plaintiffs, who had given a deed of trust upon their land which was about to be foreclosed, approached defendant, who agreed to advance the money necessary to save the land, and who accordingly purchased the land at the foreclosure sale, and took the deed to himself and paid the amount of the indebtedness, in such case while defendant acquired the legal title to the land he held it subject to a resulting trust.

APPEAL from the chancery court of Washington county. HON. E. N. THOMAS, Chancellor.

Suit by Mary Hoffman and others against Sandy Wilson. From a decree overruling a demurrer to the bill, defendant appeals.

Complainants filed their bill in the chancery court, alleging that they were the owners of a certain lot, and had borrowed money on same, and executed a deed of trust to secure the money borrowed; that they were unable to pay the indebtedness when due, and it was advertised for sale by the trustee in the deed of trust; that they then approached defendant, who agreed to advance the money necessary to save the land, and that he accordingly purchased the land at the foreclosure sale, and took a deed to himself, and paid the amount of the indebtedness; that thereafter complainants tendered him this amount and interest on same according to the agreement, complainants having in the meantime arranged for another loan on said land, when they were advised by the defendant that he had decided not to deed the property to complainants, but that he would let them have it for a sum in excess of that paid by him at the sale; that complainants declined to pay this exorbitant price, but tendered the amount advanced by defendant to buy in the property.

The bill alleged that by their agreement a trust resulted, and that defendant was thereby obligated to convey to complainants the lot upon repayment of the amount advanced by him for them to redeem the land, and prayed for a mandatory injunction to compel the defendant to execute a deed conveying said land to complainants upon receipt of the amount agreed upon. The defendant demurred, on the ground that the bill showed on its face that no trust had been created between the parties.

*A. J. Ross,* for appellant.

Our position is: 1. The bill does not show a trust arising by implication of law. 2. There is no express trust or confidence made or manifested by writing.

The bill alleges no trust or confidential relations between the parties. There is no allegation that the defendant stood in any confidential relation toward either of the complainants. The claim of the complainants as to the trust is not alleged to have arisen from the transaction, but is expressly set up by the bill to have arisen from an agreement between the parties. In other words, the allegations of the bill clearly show that complainants' claim, so far as an implied trust is concerned, arose from a breach of a parol agreement to attend the sale and buy the property for the complainants. It is true that the bill alleges that the defendant "decided to be false to his trusty," but this is merely the conclusion of the pleader for no facts are alleged which show the creation of a trust or of a trust resulting from the transaction. The most that could be said of the bill is that it alleges a breach of a parol agreement.

The cases of *Miazza* v. *Yerger,* 53 Miss. 135; *Campbell* v. *Bright,* 87 Miss. 443; *Clearman* v. *Cotton,* 66 Miss. 467; *Moore* v. *Jordan,* 65 Miss. 229; *Ragsdale* v. *Ragsdale,* 68 Miss. 92, are decisive and control the question of an implied trust.

*Miazza* v. *Yerger, supra,* shows a much stronger state of facts to establish an implied trust than the present

case. In that case the relation of attorney and client existed. In this case no confidential relations existed. In that case, as shown by the statement of facts, Miazza had arranged, in advance of the sale, to get the money from Helm to repay her agent and attorney. In this case there is no allegation that any arrangements had been made in advance by complainants to get the money from others. In fact, the bill in this case expressly negatives this notion for it says that complainants "approached the defendant, who agreed to befriend your complainants, who were but poor ignorant negroes; but advanced the necessary money for them to purchase the said property at the sale and hold the same for them until they could repay to him the purchase price paid by him at the sale." The bill shows a sale under a trust deed May 29, 1911, and alleges that on July 20, 1911, a draft was tendered to defendant and accepted by him. The bill makes no case of an implied trust, but at the most a breach of a parol agreement.

*Campbell* v. *Bright, supra,* shows a bill to specifically enforce a parol agreement by the purchaser to purchase land at a trustees sale, made before the sale, and reconvey upon payment to him within a specified time, of the debt secured by the trust deed. The court held that it was a mere sale and a verbal agreement to reconvey, and was within the statute of frauds, and *Miazza* v. *Yerger* was cited and approved.

*Clearman* v. *Cotton, supra,* holds that a verbal agreement to reconvey land is void whether made before or after a conveyance to the promisor.

*Moore* v. *Jordan, supra,* directly holds that a refusal to comply with a parol contract is not a fraud that will bring a case within the statute. Fraud must coexist with the conveyance, must infect it at its execution and disable one from interposing the statute of frauds as a protection. The case is merely a parol contract to convey. In the present case there is no allegation that Sandy

Wilson, at the time of making this promise even intended to carry it out, no allegation that he made the promise for the purpose of deceiving or defrauding the complainants, no allegation that the promise was relied upon as an inducement to the conveyance; on the contrary, the bill distinctly alleges that while Sandy Wilson bought the property at the trustee's sale May 29, 1911, and that a draft for the amount due him was tendered on July 20, 1911, that it was not until after the tender of this draft that "he decided to be false to his trust" as alleged in the bill of complaint.

In *Ragsdale* v. *Ragsdale,* 68 Miss. 92, 98, the court holds that a merely oral promise to hold land in trust, and its subsequent breach, however disappointing and harmful, and though even reprehensible in morals, is not of itself enough to cause a court of chancery to declare a trust. And the court in that case refused to sanction the doctrine that an enforceable trust will arise from a mere breach of an oral promise, however solemn, to hold land in trust. To the same effect is *Martin* v. *Martin* (Ia.) 94 N. W. 493; *Lockey* v. *Lockey* (Pa) 55 Atl. 180; *Salisbury* v. *Black* (Pa.) 13 Atl. 67. "In order that the doctrine of trusts *ex maleficio* with respect to land may be enforced under any circumstances there must be something more than a mere verbal promise, however unequivocal, otherwise the statute of frauds will be virtually abrogated; there must be an element of positive fraud accompanying the promise, by means of which the acquisition of the legal title is wrongfully consumed. Equity does not pretend to enforce a verbal promise in the face of the statute." 3 Pom. Eq. (3rd Ed.) section 1056, p. 2038.

*Percy Bell* and *Lamar Watson,* for appellee.

Should the court be of the opinion that no express trust is established by these writings the authorities are overwhelming in favor of this being an implied trust,

which can be proven by parol and which is not within the statute of frauds.  This upon the theory that the appellant, when purchasing at this sale, did not purchase with his own money but with the money of appellees, loaned to them or advanced to them by him at their request for said purchase.  By his agreement to do so, as is observed in one of the cases hereinafter quoted, he is estopped from setting up a claim that it was his money because by his action he may have misled them to their injury by inducing them to rely upon him and not seek aid of others.

The court will observe that this was a sale, under a trust deed, of the home of Mary Hoffman, the presumption, of course, being that the price paid was less than the value of the property.  Under the allegations of the bill, Wilson, in attending the sale and purchasing the property, did so as the agent and representative of Mary Hoffman, paying money which he had loaned her for this purpose, taking the title to the property as security for that money.  We refer the court to the following cases from our own supreme court:  *Bratten* v. *Rigers,* 62 Miss. 281; *Hebron* v. *Kelley,* 21 So. 799; *Thomas* v. *Thomas,* 62 Miss. 531.  In this latter case the opinion very aptly phrases such a payment "a constructive payment."  *Runnels* v. *Jackson,* 1 Howard, 358; *Cameron* v. *Lewis,* 56 Miss. 76; *Taylor* v. *Mosely,* 57 Miss. 544.  In this last named case the court established a trust even against a lender of money, who had loaned money on the property to the trustee.  In this case as in the instant case, the *cestui que trust* was in possession of the property.  *Barton* v. *Magruder,* 12 So. 839.  Here the court holds that the bill is not demurrable where a loan is alleged as in this case.  *Jones* v. *McDougal,* 32 So. 179; *Robinson* v. *Leflore,* 59, Miss. 148.

In states other than our own there is also a multitude of authorities.  We refer the court to those cited in Century Digest, vol. 27, "Trusts" section 122, 39 Cyc.

46, paragraph 3 b. The language used in the last named authority is as follows:

"Where purchase money is loaned or paid by one person for the benefit of another and a conveyance made to the lender and payer to secure his repayment or reimbursement, a resulting trust arises in favor of the person in whose behalf the money is loaned or paid, the trust being in the nature of a mortgage, which the person to whom the money was loaned has a right to redeem and compel a conveyance of the property."

We refer the court to the authorities collected in note 71 in the above authority and to the offer made by complainants in the bill to do equity by paying the amount paid by Wilson, with interest. For other authorities we refer the court to: *Smith* v. *Goethe,* 82 Pac. 384; *Howe* v. *Howe,* 85 N. E. 945; *Levy* v. *Ryland,* 109 Pac. 905; *Barroilhet* v. *Abspacher,* 8 Pac. 804 *Wallace* v. *Karnes,* 7 Pac. 676; *Caruthers* v. *Williams,* 21 Fla. 485; 47 Century Digest "Trusts" section 93; Decennial Digest "trust," section 63½. We will not burden the court with further authorities on this proposition.

It was entirely appropriate for the appellant to invoke the statute of frauds. He is not the first man who endeavored to effect a fraud and then sought shelter behind the statute of frauds and lay in ambush awaiting for his victim. As the court says in 231 Missouri at page 370: "A statute levelled against fraud ought not to apply to a case where it would work a fraud, thus accomplishing judicially the shameful thing which the law was intended to prevent others from accomplishing." We submit that there is a case of implied trust here and that the part performance of the alleged agreement in the handing to Wilson of the draft and his acceptance and endorsement of it would take it out of the statute. *Ryan & Nevans* v. *Dox,* 90 Amer. Dec. 696.

As illustrating how far the courts of Mississippi will go to uphold an agreement such as alleged here, we re-

fer the court to the case of *Soggins* v. *Hearf*, 31 Miss. 426, where the court says: "It is not now an open question that when a party agrees before the sale to purchase property about to be sold under an execution against a party, and to give such party the benefit of the purchase, that the agreement is binding and will be enforced. The defendant, upon the faith of such an agreement, may have ceased his efforts to raise the money for the purpose of paying off the execution and thus preventing a sale of his property. It will not do to say that the party promising, was moved merely by friendly or benevolent considerations, and may, therefore, at his option decline a compliance with his agreement. Such considerations constitute the foundation of almost every trust and the trustee should be held to account as nearly as possible, in the same spirit in which he originally contracted. But it is said that the agreement, if in fact made, was void under the statute of frauds. The statute has reference alone to the sale of lands and not to a contract to purchase by one person for the benefit of another."

We also refer the court to *Fishbreck* v. *Green*, 7 So. 881; *Brannin* v. *Brannin*, 18 N. J. Eq. 212, which very properly hold that the statute does not apply to cases of implied trusts and attempted frauds.

We submit that the foregoing authorities overwhelmingly sustain the appellees and the court below in holding that the appellees sufficiently allege an implied trust which a court of equity will enforce.

*Salisbury* v. *Black*, 13 Atl. 67. In this case there was no payment by or for the *cestui que trust;* no writings to evidence a trust as in this case and no tender of the money.

*Martin* v. *Martin*, 94 N. W. 493. In this case there was no implied trust, no loan of the money and no attempt to establish an implied trust but an effort made to achieve the impossible, namely, to establish an express trust without any writings.

*Ragsdale* v. *Ragsdale,* 68 Miss. 92. This is really a good case for the appellees as it was also an instance of a fraud seeking shelter behind the statute. In this case the son of the testator influences his father to his own profit and to the injury of others, cheating the intended beneficiary. In the case at bar the appellant as the appellant in the case of *Soggins* v. *Heard,* by his conduct so satisfied the minds of the appellees that there was no necessity of their seeking aid elsewhere. He surely cannot be permitted to benefit by this act of perfidy.

*Moore* v. *Jordan,* 65 Miss. 229, 3 So. 737. This case, we submit, is not in point. It is merely an instance of parties attempting to work a fraud being caught at it and by it and the court refuses to assist them in their dilemma.

*Clearman* v. *Cotton,* 66 Miss. 467, 6 So. 156. This case is not within the limits of the instant case in that there was merely a parol promise. There was absolutely no writing and no advancement of money as there is in the instant case.

*Campbell* v. *Bright,* 87 Miss. 443, 40 So. 3. Here the purchaser and alleged trustee went into possession of the property and remained for years. There is no allegation of a loan and the cases are only similar, as are the preceeding cases, in there having been a parole agreement. In the instant case there was, besides a parole agreement, a loan of money by the trustee to secure the payment of which a deed was taken.

*Yerger* v. *Miazza,* 23 Miss. 135. This case is the one most relied upon by the appellant. In it, however, the court will observe that Yerger was the attorney of Mrs. Miazza, bought the lands in his own name, paying for them with his own money and not with the money advanced by him for her. She had made arrangements to borrow the money from Helm and not from Yerger and there was no subsequent offer on the part of Yerger to

re-deed the property to her upon the payment of the money advanced for her. The allegations of the bills in the two cases are totally different. In that case Yerger violated a personal confidence and was guilty of a breach of faith but he was not acting as a trustee nor could there have been established a purchase money trust.

COOK, J., delivered the opinion of the Court.

This case is controlled by *Robinson* v. *Leflore,* 59 Miss. 148, and *Thomas* v. *Thomas,* 62 Miss. 531. In distinguishing the case of *Robinson* v. *Leflore* from *Miazza* v. *Yerger,* 53 Miss 135, the court says: "While a trust which a court of equity will enforce may spring out of the relations of the parties, no such trust can arise by a parol contract between parties, and that wherever the claim is based solely on a parol agreement it must be treated as absolutely void. We do not consider the case at bar as resting on the contract of the parties, but as springing out of the facts alleged, which show a purchase of the land with Mrs. Leflore's money, and make, therefore, a case of resulting trust. . . . We have said that the money invested in the purchase was the money of Mrs. Leflore, though actually handed to the trustee for Mr. Robinson, and this statement we think is clearly deducible from the allegations of the bill." In *Thomas* v. *Thomas, supra,* the court said: "To the existence of a resulting trust, it is necessary that in the transaction of purchase the money or credit of the beneficiary should be used; but a constructive payment by him is equally efficacious as one made by him in person. Thus, if the person who actually makes the payment of the money does so under an agreement to lend the amount to the other, and pays it as the money of the other, taking title in himself as security for the money loaned, a trust arises in favor of the borrower."

The allegations in the bill are similar to the illustrations given by this court in *Thomas* v. *Thomas.* It is al-

leged that Sandy Wilson, appellant, agreed to loan the money to appellees for the purpose of redeeming their land from the lien of the trust deed, and in pursuance of this agreement it was further agreed that Wilson would purchase the land at the sale, and take a deed in his own name as a security for the payment of the money so advanced by him, all of which it is alleged was done. We can see no substantial difference in this case and the case of *Robinson* v. *Leflore, supra,* and the action of the chancellor in overruling the demurrer is affirmed.

*Affirmed.*