SAMPLE et al. v. ROMINE.

(In Banc. May 25, 1942. Suggestion of Error Overruled Sept. 21, 1942.)

[8 So. (2d) 257. No. 34945.]

(In Banc.   Nov. 2, 1942.)

[10 So. (2d) 346.   No. 34945.]

Bridgforth & Love, of Yazoo City, and Saye & Saye, of Longview, Texas, for appellants.

Henry & Barbour, of Yazoo City, Watkins & Eager, of Jackson, and Walter L. Brown, of El Dorado, Ark., for appellee.

**Saye & Saye**, of Longview, Texas, and **Bridgforth & Love**, of Yazoo City, for appellants, on motion to correct judgment.

**Henry & Barbour**, of Yazoo City, **Watkins & Eager**, of Jackson, and **Walter L. Brown**, of El Dorado, Ark., for appellee, on motion to correct judgment.

Argued orally by **W. T. Saye** and **Allen Bridgforth**, for appellants, and by **W. H. Watkins**, for appellee.

**Roberds, J.**, delivered the opinion of the court.

Appellee, Romine, by bill in equity sought (1) to have established in and conveyed to himself a one-third interest in nine mineral and royalty leases on an aggregate of 884 acres of land in Yazoo County, Mississippi, and

(2) for an accounting of the profits and recovery of one-third thereof which defendants had realized on such leases. The bill prayed for an attachment against the interest of said defendants in such leases and joined as defendant-garnishee the Union Producing Company, which concern was developing for oil the lands covered by one of the leases and was indebted to Sample and Mrs. Mucher through such operations. The leases stood in the names of J. C. Falvey and Clark Sample. The rights of Romine were grounded on a verbal arrangement he claims to have had with Falvey and Sample and acts and conduct of the parties pursuant thereto, as will be more fully set out hereinafter. Mrs. Mucher is the widow and sole devisee in the will of Dr. J. C. Falvey, deceased.

Sample and Mrs. Mucher denied the material allegations of the bill and the rights asserted therein; plead Section 3348, Code of 1930, requiring creations of trusts to be in writing, stale claim and laches.

The chancellor found the facts substantially as hereinafter set out; held that Romine was entitled to a one-third interest in the leases and the minerals and that Sample and Mrs. Mucher held title thereto as trustees for Romine's interest; ordered them to convey to Romine such one-third within thirty days, failing in which he empowered and ordered the clerk of the court as a commissioner thereof to execute the conveyance, and appointed a master to state an account of the income and profits from the operations under the leases.

The first question we must determine is the relation which existed between Romine and Falvey and Sample. This necessitates a statement of our conception of the ultimate facts shown by the evidence.

Dr. Falvey and Sample and Romine were friends and all lived at El Dorado, Arkansas. Falvey and Sample were then bachelors and lived together. Dr. Falvey was a general medical practitioner, Sample a prominent business man, and Romine operated a large restaurant. Fal-

vey and Sample were men of financial means, and Romine a man of considerable experience and knowledge in the oil and gas business and especially in procuring mineral leases. On November 1, 1929, Dr. Falvey called Romine into his office and told him that he had been informed by a "scout" for a large oil company that prospects were good for oil in Yazoo County, where a well was then being drilled. Dr. Falvey suggested that he would put up five hundred dollars and would get another person to put up a like sum and turn that over to Romine if Romine would go to Yazoo County and buy oil and gas leases, scattered through such area as Romine might think wise, and the three would share one-third each in the enterprise, after repayment of the thousand dollars, the leases to be taken in the names of Falvey and the other party. Romine agreed to that proposition. On November 4, 1929, Dr. Falvey informed Romine that Mr. Sample was agreeable to the plan, and had paid to him, Falvey, the other five hundred dollars, which, in fact, he had done. This arrangement was all verbal. Falvey and Romine went to a bank in El Dorado, where Dr. Falvey procured a cashier's check for one thousand dollars, payable to Romine, and delivered it to him. Romine and his wife, in Romine's automobile, left for Yazoo County. Romine placed the amount of this check to his credit in a bank in Yazoo City. He went about over the county, contacting landowners, and finally procured the nine leases, all in the name of Falvey and Sample, scattered and blocked as he thought advantageously. He worked at that for six days. He paid the owners one dollar per acre for the leases, aggregating $884.00 for the nine, by checks drawn in his name on the Yazoo bank. He witnessed the signatures of the lessors to all of the leases and made affidavit of their execution for purpose of having them recorded. He filed all of the leases with the chancery clerk for record and procured from the clerk certified copies thereof. He also obtained maps and plats of the county and the leased premises and data on the titles

of the lessors. He then went back to El Dorado and made a written report to Dr. Falvey, showing all of the leases, the amount paid for each, and showing also he had expended $33.60 for recording the leases, for certified copies, maps, etc., leaving $82.40 which, by direction of Dr. Falvey, he applied on his expenses, which had exceeded that amount. Under the arrangement Romine kept in his possession all of the papers, bank records, paid checks, data, leases, and documents. It appears the original leases, after being recorded, were mailed to Dr. Falvey, who delivered them to Romine. It was also understood that Romine was to keep in touch with developments in Yazoo County and mainly look after the handling of the properties, Dr. Falvey suggesting they would try to sell some of the leases and ''clear out''—meaning, we assume, the repayment of the furnished money—and retain and develop the remainder.

The well then being drilled proved to be a dry hole, and oil activity in that section died out.

Dr. Falvey and Sample moved to Texas, from which place they, as well as Romine, had come to Arkansas.

In December, 1938, Dr. Falvey died, leaving a will in which his widow was the sole beneficiary. She remarried and became Mrs. Mucher.

In August, 1939, there were again signs of oil in Yazoo County from another well then being drilled. Romine returned to Yazoo County to investigate and look over the situation. He was impressed with the possibility of oil in that territory. He called Sample over the telephone and he also wrote him a letter, giving an account of the oil prospects, and recited in his letter the understanding he had had with Dr. Falvey. To this time the matter had not ben discussed personally between Romine and Sample, although witnesses testified to hearing conversations between Falvey and Sample, and some also quoted Falvey and Sample in conversations with the witnesses, substantiating the arrangement as heretofore set out. Following up this letter Romine mailed the

leases to Sample. He also wrote one Clapp, who had been secretary to Dr. Falvey and who was assisting Mrs. Mucher in the handling of her business, reporting the oil situation in Yazoo County and setting out the oral arrangement with Dr. Falvey and, in substance, what had been done thereunder, later sending to Clapp, in response to Clapp's written request, a copy of the statement he had furnished Falvey on his return to El Dorado.

The Union Producing Company, when suit was filed, had brought in an oil well on one tract of the leased premises, and Sample and Mrs. Mucher had received from the operation of the properties more than the thousand dollars.

There were conferences between Sample, Mrs. Mucher and their attorney and Romine. Sample and Mrs. Mucher then denied all claims of Romine.

The leases conveyed a one-half interest in each (1) the minerals in place, (2) the royalties and (3) future rentals to keep the leases alive, all under and subject to prior leases on the premises in favor of one Evans.

The chancellor admitted over objection proof of prior similar dealings between Romine and Dr. Falvey and between Romine and Sample and one Lake, all verbal, in which each party had an interest in the property and which were handled generally in the same manner as the venture under consideration was to be handled, some of the former leases being taken in the name of one, or more, but not all, of the interested parties, some being in the name of Mrs. Romine, but all held and used for the common benefit. In some, but not all, of these cases letters were later written by the title holders to the other interested parties confirming the oral arrangement.

We are not certain of the particular bases on which the chancellor grounded the rights of Romine growing out of the foregoing state of facts, but one was that of a joint adventure. We think that is the true relation between the parties.

While perhaps no exact definition of a joint adventure can be given, nor can a general rule be laid down by which the question as to what amounts to a joint adventure can be answered, the answer in each case depending on the terms of the agreement, the acts of the parties, the nature of the undertaking and other facts (30 Am. Jur., page 680, Sec. 7; State ex rel. Ratliffe v. Superior Court, 108 Wash. 443, 184 P. 348), some definitions have been attempted. In 30 Am. Jur., page 677, Sec. 3, it is said: "A joint adventure has been broadly defined as an enterprise undertaken by several persons jointly, and, more particularly, as an association of two or more persons to carry out a single business enterprise for profit . . . an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge." In Simpson v. Richmond Worsted Spinning Co., 128 Me. 22, 145 A. 250, 253, the Court said a " 'joint adventure' has been defined as 'an association of two or more persons to carry out a single business enterprise for profit.' . . ." A federal court said " 'Joint adventure' exists when two or more persons combine in joint business enterprise for their mutual benefit with understanding that they are to share in profits or losses and that each is to have voice in its management." Chisholm v. Gilmer, 4 Cir., 81 F. (2d) 120, 121, affirmed 299 U. S. 99, 57 S. Ct. 65, 81 L. Ed. 63, rehearing denied 299 U. S. 623, 57 S. Ct. 229, 81 L. Ed. 458. Other definitions will be found in the notes in 48 A. L. R., beginning at page 1055, and in 63 A. L. R., beginning at page 910.

The contributions may be in money, materials, services—"something promotive of the enterprise." Simpson v. Richmond Worsted Spinning Co., supra.

There must be a joint proprietary interest and right of mutual control. 30 Am. Jur., page 682, Sec. 11; Franco v. Vakares, 35 Ariz. 309, 277 P. 812; Dempsey-Kearns Theatrical & Motion Picture Enterprises v. Pantages, 91 Cal. App. 677, 267 P. 550; Atlas Realty Co. v. Galt, 153

Md. 586, 139 A. 285; Darling v. Buddy, 318 Mo. 784, 1 S. W. (2d) 163, 58 A. L. R. 493; Bloom v. Leech, 120 Ohio St. 239, 166 N. E. 137; Marcus v. Grant, 289 Pa. 1, 137 A. 120; Virginian R. Co. v. Farr, 147 Va. 217, 136 S. E. 668. The joint purpose and proprietary interest and control distinguish joint adventures from tenancy in common.

An agreement, express or implied, for sharing in the profits is essential to a joint adventure, but the courts differ as to whether there must be an agreement to share in the losses. However, there need be no specific agreement to share in the losses, and if the nature of the undertaking is such that no losses other than those of time and labor in carrying it out are likely to occur, an agreement to share the profits may stamp it as a joint adventure, although nothing is said about sharing the losses. Keiswetter v. Rubenstein, 235 Mich. 36, 209 N. W. 154, 48 A. L. R. 1049; Alderton v. Williams, 139 Mich. 296, 102 N. W. 753.

A contract between the parties is necessary, but it need not be express or embodied in a formal agreement. It may be inferred from the facts, the conduct of the parties and the circumstances. Cooperstein v. Shapiro, 122 N. J. Eq. 238, 192 A. 826; Wyoming-Indiana Oil & Gas Co. v. Weston, 43 Wyo. 526, 7 P. (2d) 206, 80 A. L. R. 1037; Annotations 48 A. L. R. 1058, 63 A. L. R. 910.

It differs from a general partnership in that a joint adventure relates to a single transaction, while a partnership usually relates to a general and continuing business of a particular kind; the relation of joint adventurers is usually of shorter duration and less formal in the agreement than a general partnership (Champion v. D'Yarmett, Tex. Civ. App., 293 S. W. 587; Dempsey-Kearns T. & M. P. Enterprises v. Pantages, supra; Dolan v. Dolan, 107 Conn. 342, 140 A. 745; Fuller v. Laws, 219 Mo. App. 342, 271 S. W. 836; Central Trust Co. v. Creel, 184 Ky. 114, 211 S. W. 421; Boles v. Akers, 116 Okl. 266, 244 P. 182; Annotations 48 and 63 A. L. R., supra), and the authority of the interested parties, growing out of the

relation, is less extensive in a joint adventure than in a general partnership. Champion v. D'Yarmett, supra; Toof, Phillips & Cirode v. Duncan, 45 Miss. 48; Davis v. Richardson, 45 Miss. 499, 7 Am. Rep. 732; Prince v. Crawford et al., 50 Miss. 344. However, the rights and duties of the parties inter se are practically the same in both relations. Goss v. Lanin, 170 Iowa 57, 152 N. W. 43; Swanson v. Lindstrom, 151 Minn. 19, 185 N. W. 950; Johnson v. Farmers' & M. State Bank, 152 Minn. 442, 189 N. W. 583, 584; Kaufman v. Catzen, 100 W. Va. 79, 130 S. E. 292; Boles v. Akers, supra; Pritchett v. Thomas Plater & Co., 144 Tenn. 406, 232 S. W. 961.

Such venture exists in real property where there is ". . . an agreement to combine money, effort, skill, and knowledge, and to purchase land for the purpose of reselling or dealing with it at a profit . . ." 30 Am. Jur., page 684, Sec. 15.

A joint adventure, or partnership, was held to exist in the acquisition of oil and gas leases and operations thereunder where the facts and circumstances were very similar, and in some of them practically identical, with those here under consideration, in the following cases: Kirkpatrick v. Baker, 135 Okl. 142, 276 P. 193, where the lease was taken in the name of one of the four parties; Wyoming-Indiana Oil & Gas Co. v. Weston, 43 Wyo. 526, 7 P. (2d) 206, 80 A. L. R. 1037, where the lease was also taken in the name of one of the parties; Grennan v. Forgeron, Tex. Civ. App., 101 S. W. (2d) 885, based on oral agreement and one party furnished services and the other advanced money and the leases were taken in the name of one party, a case practically the same on its facts as the one at bar; Thompson v. Corbin, Tex. Civ. App., 137 S. W. (2d) 157; Lavaca Petroleum Corp. v. Runk, Tex. Civ. App., 111 S. W. (2d) 1113; Strack v. Strong, Tex. Civ. App., 114 S. W. (2d) 313; Brady v. Brady, 48 Ariz. 308, 61 P. (2d) 390 (a mining partnership); Mildren v. Root, 262 Ky. 826, 91 S. W. (2d) 523; Shoemake v. Davis, 146 Kan. 909, 73 P. (2d) 1043; Wolfe v. North, 182 Okl.

520, 78 P. (2d) 674, an oral agreement to purchase and sell royalties, title to which was taken in name of one party.

In such cases, although the title to the property is permitted to be taken in the names of some of the co-adventurers, the rights of the others are not impaired thereby, and the one holding the title becomes in equity a trustee for all. The trust thus imposed follows the property until it passes into the hands of innocent bona fide purchasers. Authorities in paragraph next preceding; Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108, Ann. Cas. 1914C, 689; Floyd v. Duffy, 68 W. Va. 339, 69 S.-E. 993, 33 L. R. A. (N. S.), 883; Seymour v. Freer, 8 Wall. 202, 19 L. Ed. 306; Austin v. Stephen, 89 Colo. 177, 300 P. 364; Dierks & Sons Lumber Co. v. Bruce, Mo. Sup., 239 S. W. 133; Lind v. Weber, 36 Nev. 623, 134 P. 461, 135 P. 139, 141 P. 458, 50 L. R. A. (N. S.), 1046, Ann. Cas. 1916A, 1202; Meinhard v. Salmon, 249 N. Y. 458, 164 N. E. 545, 62 A. L. R. 1.

The relationship between the joint adventurers is fiduciary in character and imposes upon all the participants the utmost good faith, fairness, and honesty in their dealings with each other as respects the enterprise. "This is especially true of those . . . to whom the property involved therein is intrusted." 30 Am. Jur., pg. 695, Sec. 34.

In such cases parol evidence is admissible as between the parties themselves to show the facts and circumstances even as to real estate. Burroughs v. Lasswell, Mo. App., 108 S. W. (2d) 705; Shoemake v. Davis, supra; Annotation 27 L. R. A., pages 464, 465, and 466. 65 C. J., page 373, Sec. 150. For admission of parol evidence in resulting trust cases not based on partnership see Perry on Trusts, Vol. 1, page 181, Sec. 137; Miazza v. Yerger, 53 Miss. 135; Moore v. Moore, 74 Miss. 59, 19 So. 953; Wilson v. Hoffman, 104 Miss. 743, 61 So. 699. The trust arises and results by operation of law from the facts and circumstances attending the transac-

tion and the relation of the parties. This is true even though as a part of the original understanding it was orally agreed title should be taken in one of the parties, if there are other facts and circumstances surrounding the transaction which cause a trust to result. 65 C. J., supra. As was said in Thomas et al. v. Thomas, 62 Miss. 531: "It is well settled by authority that where, on the facts proved, a trust would result in the absence of an express agreement, the fact that such agreement was made will not prevent the trust from arising." In 40 Am. Jur., page 195, Sec. 96, it is said ". . . A partner is whose individual name is vested real estate belonging to a partnership is accordingly treated in equity as a trustee holding the property for the benefit of the partnership to the same extent as if the conveyance had named all the partners as grantees. In such case a court of equity may compel the particular partner to make such conveyance as the necessity of the business and the rights of the co-partner require, and this is true although a trust may not have been declared in writing." Grennan v. Forgeron, supra; Dutton v. Interstate Investment Corp., Cal. Sup., 119 P. (2d) 138. Resulting trusts are expressly excepted from Section 3348, Code of 1930, requiring declarations of trusts to be in writing, by these words ". . . but where any trust shall arise or result, by implication of law, out of any conveyance of land, such trust or confidence shall be of the like force and effect the same as it would have been if this statute had not been passed."

But appellants say Romine is not entitled to minerals because in his bill he said the agreement was that he was to get one-third of the profits after repayment of the thousand dollars. And it is true the bill so stated in setting out the agreement. However, in another part of the bill he alleged the parties "engaged in a joint interprise of purchasing minerals" and prayed for a one-third interest in the minerals; also in a bill of particulars later furnished, made a part of the bill, while he again used the

term profits, he therein said "that he had purchased minerals prior to that time . . ." for Falvey and Sample "on the same basis," and the testimony as to those prior dealings showed they included the minerals in place, as well as the profits. Romine testified that he understood the word "profits," as used in the bill, to include minerals in place, and the other witnesses of Romine, repeating conversations of Falvey and Sample, used expressions which included minerals and all property and rights acquired. In Grennan v. Forgeron, supra, the court held that profits included royalties. The chancellor held on the entire record that the arrangement here included all the property ·acquired.

Aside from whether the right to profits from a thing includes a right to the thing itself and whether the fact appellants have denied all rights of appellee and have thereby terminated the venture, entitled appellee to the thing itself for the purpose of realizing profits (Strack v. Strong, Tex. Civ. App., 114 S. W. (2d) 313), neither of which questions we decide, we are not prepared to say the chancellor was in error in his conclusion.

Appellants say the admission of evidence of past similar transactions between Romine and Falvey and Romine and Sample was reversible error. Romine had alleged in his bill the transaction in this case was the same in nature and effect as the former dealings. Attempting to state facts by reference to other transactions is certainly not the best way of stating the facts, but there was no motion to strike these allegations. However, aside from that, the former transactions ranged over a period from 1925 to, and including, 1929, and were closely connected with the present transactions. "Testimony is sometimes received, however, of other contracts between the same persons for the purpose of proving the contract in question provided the different contracts were so connected as to illustrate a general plan." Jones on Evidence—Civil Cases, Second Edition, Section 140. We think this evidence was competent to throw light on the general plan

used by these parties in procuring and handling oil and gas leases. See Jack v. Mutual Reserve Fund Life Assn., 5 Cir., 113 F. 49, at page 57, and Bernheim v. Dibrell, 66 Miss. 199, 5 So. 693.

Witnesses testified to hearing statements both by Falvey and Sample about the arrangement with and rights of Romine, some between Falvey and Sample themselves and some made by each out of the presence of the other. Laying aside whether even the statements made by each out of the presence of the other would be competent against the other, since this was a joint venture, the separate admissions were competent against the one making them, and those made when both were present were competent against both, and there was sufficient of this, with the other evidence in the case, to support the finding of the chancellor, and ''A judgment or decree will not be reversed for the admission of incompetent, when supported by other and competent, evidence.'' Union & Planters' Bank & Trust Co. v. Rylee, 130 Miss. 892, 94 So. 796, 799.

Two of the lessors testified to statements of Romine, made to them while he was undertaking to procure the leases from them, that he and others were interested in the leases. These statements were self-serving and incompetent, but there was other and competent evidence sufficient to support the finding of the chancellor, and the rule in the Rylee case, supra, prevents this being reversible error.

Appellants say appellee is barred by laches in asserting his rights. Aside from statutes of limitation, laches, in a legal sense, is not merely delay, but delay that results in injustice or disadvantage to another. Time is only one element. There must be some other element than mere passage of time, some element of estoppel or change in conditions or relations of the parties, or intervention of rights of third persons, so that it would be inequitable to permit the party to then assert his rights. There is

no absolute rule as to what constitutes laches or staleness of demand. Each case must be determined under its own peculiar circumstances. Too, the question of laches is largely addressed to the sound discretion of the chancellor, and his decision will not be disturbed on appeal unless it is clearly wrong and amounts to an abuse of discretion. Comans v. Tapley, 101 Miss. 203, 57 So. 567, Ann. Cas. 1914B, 307; 21 C. J., page 217; 10 R. C. L., page 396, Sec. 143. This suit was filed in January, 1941. Until shortly before this there had been no occasion for appellee to institute a suit. He had kept possession of the papers. Oil interest had been dormant in the area of the leased premises since 1929 until it was revived in August, 1939. Upon the revival of oil interest Romine came back to the scene and began to communicate with Sample and Clapp and recount his interest in the project. About July, 1940, the Union Producing Company produced a well on one tract, through which operations the thousand dollars had been repaid. There were conferences between the parties and attorney for appellants and then a denial of the rights asserted by Romine. These circumstances constitute a natural and reasonable explanation for any delay in instituting suit. There is no attempt to disturb the rights of third persons and the delay has caused no injustice or inequity to appellants.

Affirmed and remanded.

**Anderson, J.**, delivered a dissenting opinion on suggestion of error.

The other members of the court are of opinion that the Suggestion of Error is without merit. It is therefore overruled. The writer is of the opinion that it ought to be sustained and that the question involved is so important that he ought to state his reasons therefor in a dissenting opinion.

The applicable statute of frauds is embodied in Chapter 64 of the Code of 1930, Section 3348 of which provides in part that ''all declarations or creations of trusts or confidence of or in any land shall be made and manifested by writing, signed by the party who declares or creates such trust, or by his last will, in writing, or else they shall be utterly void,'' but that this requirement shall not apply to constructive trusts. This statute is substantially the same as the seventh section of the English statute of frauds. Appellee sued for one-third of all sums received from the mineral rights and in addition prayed that the court decree that he was the owner of a one-third interest in such rights in the land and that a commissioner be appointed by the court to execute a deed conveying to him such one-third interest. This is not a suit, therefore, by Romine for compensation for his services, but a suit for an interest in land and the mineral receipts therefrom. The question is whether under the undisputed facts this is an express trust or a constructive trust, if the former, of course, it had to be in writing, if the latter it did not. It seems clear that it was the former. Nothing was left unagreed to and the principal part of the contract rested in parole. A constructive trust is one on which some of the essential facts were not agreed to but results from relationship and acts of the parties.

A verbal agreement made upon the execution of a deed to land that the grantee hold the property in trust for the benefit of the grantor to prevent the latter's improvidence is within the statute. Horne v. Higgins, 76 Miss. 813, 25 So. 489; Miazza v. Yeager, 53 Miss. 135; Lewis v. Williams, 186 Miss. 701, 191 So. 479. An oral contract by the father to convey land to his daughter in return for her care of him during his lifetime comes within the statute and is void, but the daughter could recover a fair value for her services rendered thereunder. Stephens v. Duckworth, 188 Miss. 626, 196 So. 219.

To illustrate: A employs B to buy a quarter section of land for him and to take the conveyance in A.'s name, and agrees that after this is done he will convey to B an interest in the land as compensation for his services. The contract is verbal. Such a contract is within the statute and void. On the other hand, if B violates the agreement and takes the conveyance in his own name there is a constructive trust in A.'s favor, under the definition of the concluding clause of the statute.

One of the latest works on Trusts and Trustees is Bogert, in seven volumes. In vol. 3, sec. 488, pages 1538 and 1539, there is a discussion of the application of the statute of frauds to a joint enterprise. On the latter page there is this paragraph:

"If, on the other hand, A and B contract that B shall get title to land in himself, and later, on A's payment of a certain sum, convey part to A, there is a contract within the fourth section, it would seem. The fiduciary obligation happens to be identical with the obligation required to be manifested by writing, under the statute. That it is a fiduciary obligation should not exempt it from obedience to the statute any more than if it were a nonfiduciary contract." The authorities in the notes to sustain it are from Arkansas, Georgia, Oregon, Oklahoma, Texas and Missouri. Giving the transaction the name of a "joint enterprise" does not take it from the operation of the statute. If it is a trust in land and is provable in any substantial respect by word of mouth, the statute governs regardless of the name given the transaction.

In the Wyoming decisions relied on by appellants it was expressly stated that they were based on the fact that the legislature of that state had not enacted the seventh section of the English statute of frauds.

The agreement was to convey to Romine an interest in the land, the contract was verbal, therefore it was void under the statute of frauds. If Romine had violated the

agreement and taken the leases in his name there would have been a constructive trust in favor of the appellants.

The controlling opinion simply, in my judgment, obliterates Section 3348 of the Code of 1930.

**McGehee, J.,** delivered the opinion of the court on motion to correct judgment.

This motion is predicated upon an alleged mistake of the clerk in entering a judgment different from that intended to be rendered by the court, and not upon any alleged error of the court in deciding the issues which were considered and determined in the opinion, as presented by the assignment of error and briefs, when the decree appealed from was affirmed and remanded. The alleged mistake of the clerk consisted in including in the judgment heretofore entered the five per cent damages provided by Section 3387, Code of 1930, on the amount of the value of the property the possession of which was directed to be changed by the decree, and which five per cent damages amounts to the sum of $5,000 when calculated on the basis of the value fixed by the chancellor on the property involved, the statute in question providing that: "In case the judgment or decree of the court below be affirmed, or the appellant fail to prosecute his appeal to effect the Supreme Court shall render judgment against the appellant for damages, at the rate of five per centum and costs."

The decision in the above styled cause was rendered on May 25, 1942, (8 So. (2d) 257), on an appeal granted herein by the chancellor under Section 14, Code of 1930, to settle all of the controlling principles involved and to avoid expense and delay, the decree appealed from having directed a change in the possession of property. The chancellor had found the facts in favor of the appellee Romine under his contention that Sample and Falvey had furnished money with which Romine, who

was experienced in the oil and gas business, had purchased oil leases with the understanding that after repayment of the money furnished the three parties to the agreement would share one-third each in the enterprise, and that the leases acquired by Romine in the minerals on certain lands so purchased in the names of Sample and Falvey were held by them as trustees of Romine's interest; ordered them to convey to Romine such one-third within thirty days, failing in which he empowered and ordered the clerk of the court as a commissioner thereof to execute the conveyance, and appointed a Master to state an account of the income and profits from the operations theretofore conducted under the said leases in order that Romine might thereafter be paid his one-third thereof, subject to the repayment of the money advanced by Sample and Falvey for the purchase of the leases and also subject to any expenditures then unascertained that they may have properly made for the development of the properties involved. The Master was ordered to report to the court his findings of law and fact as to the rights of the parties under such an accounting, and for proper hearing and further decree thereon. The decree then proceeds to adjudge that such an accounting will be voluminous and extraordinarily expensive, and that to avoid such expense and the delay incident thereto an appeal to the Supreme Court should be granted under said Section 14, Code of 1930, and it also undertook to adjudicate the value of the interest of the said Romine to be the sum of $100,000, as of that time, and fixed the amount of the supersedeas appeal bond at the sum of $200,000, under Section 29, Code of 1930, although the value of such one-third interest could not be adjudicated at any definite amount so as to preclude the value being questioned by the appellants, since an accounting was adjudged to be necessary to thereafter determine the income and profits from the operations theretofore conducted under the leases and to ascertain the amount of

expenditures appropriately made by the appellants in connection therewith and for which they would be entitled to reimbursement from the one-third interest declared to be vested in the said Romine. Therefore, we think it clear that the court below undertook to fix the value of the one-third interest of Romine only for the purpose of determining the amount of the appeal bond to be furnished by the appellants and not as a final decree which would preclude a further consideration of such value. Moreover, the value of the one-third interest to be conveyed to Romine in the properties which remain to be developed and which are still held in the names of Sample and Falvey was wholly immaterial to the issue involved, except for the purpose of fixing the amount of a supersedeas bond for appeal. Only the amount of the income and profits derived from previous operations, after allowing proper credits for expenditures made by the defendants in developing the properties, is of importance; and as heretofore stated the accounting is yet to be had to ascertain the amount thus due, subject to approval by the court upon the coming in of the Master's report on a further hearing provided for in the decree appealed from.

The main question for decision on the motion now presented is whether the decree appealed from is a final or an interlocutory decree, since it was held in the case of Canal Bank & Trust Co. v. Brewer, 147 Miss. 885, 113 So. 552, 114 So. 127, 128, the five per cent damages allowed by Section 3387, Code of 1930, where the judgment or decree of the court below be affirmed or the appellant fails to prosecute his appeal to effect, are not permitted in appeals from interlocutory decrees, and in which case, supra, the court said: "In order to appeal from an interlocutory decree under section 17, chapter 151, Laws of 1924 [now Section 14, Code of 1930], it takes the joint action of the court and the appellant. If the appellant commits a wrong against the appellee in taking the ap-

peal, the court granting the appeal, is a party to the wrong. An appeal under that statute from an interlocutory decree to settle the principles of the case is an appeal for the benefit of all parties to the cause. It has for its purpose the correct guidance of the trial court in the further progress of the case. Although the appellant may be unsuccessful, the result of such an appeal may be as much for the benefit of the appellee as the appellant. . . . We are of opinion, therefore, that the latter statute only applies to final decrees, such decrees as to which the law gives to the complaining party an absolute right of appeal; that the statute applies alone to cases where the unsuccessful appellant is the sole cause of the wrong done the successful appellee. That is not true of appeals from interlocutory decree."

In the case of Comans v. Tapley, 101 Miss. 203, 57 So. 567, 572, Ann. Cas. 1914B, 307, it was said, among other things, that "where the further action of the court in the cause is necessary to give completely the relief contemplated by the court, there the decree upon which the question arises is to be regarded, not as final, but interlocutory."

And in the case of Gilleylen v. Martin et al., 73 Miss. 695, 19 So. 482, it was held that a decree directing a partition of land, if it can be equitably done, and, if not, that the commissioners appointed to make the same shall report accordingly to the next term of the court, is not a final decree, but an interlocutory decree, from which no appeal lies. But, of course, such an appeal may now be granted as from an interlocutory decree under Section 14, Code of 1930. In such a case, it is often true that the rights of those claiming to be tenants in common of the property involved are fully adjudicated insofar as ownership is concerned, and the decree ordering the partition may still not be final.

In Griffith's Mississippi Chancery Practice, Section 610, the rule is stated to be that: "A decree is final when

nothing in the case is reserved by the court for further decision. Where the further action of the court in the cause is necessary to give completely the relief contemplated by the court, then the decree upon which the question arises is to be regarded not as final but as interlocutory; . . ."

Again, in Griffith's Mississippi Chancery Practice, Section 611, it is said that "the decree may be interlocutory as to some one or more of the parties and final as to the others." But, that is not the case here; it is not final in definitely determining the amount of the recovery by the appellee or the measure of the liability of the appellants, but pretermits such an adjudication until the accounting can be had.

In the case at bar the decree appealed from expressly provided that the Master appointed to state an accounting as to the earnings and profits that had accrued from previous operations and of the expenditures appropriately made by the appellants for the development of the properties should be reported to the court, with findings of law and of fact upon said accounting, for proper hearing and further decree thereon. The chancellor, therefore retained matters of law and of fact—a substantial portion of the merits of this case, for further determination.

As to the right of the court to correct the judgment entered by the clerk under our decision herein of May 25, 1942, and in regard to which a suggestion of error challenging the correctness of the decision as to the issues which had been considered and discussed in the opinion then rendered was overruled on September 21, 1942 (9 So. (2d) 643), during the present term of the court, it is provided by Section 755, Code of 1930, that: "Where, in the record of a judgment or decree of any court of law or equity, there shall be a mistake, miscalculation, or misrecital of any sum of money, quantity of any thing, or of any name, and there shall be among the

records of the proceedings in the suit any verdict, bond, bill, note, or other writing of the like nature or kind, or docket or other memoranda by the judge or chancellor, whereby such judgment or decree may be safely amended, it shall be the duty of the court, and of the judge thereof in vacation, to amend such judgment or decree thereby according to the truth, . . ."

And in the case of Humphreys et al. v. Thompson et al., Miss., 130 So. 152, 153, wherein the five per cent damages were erroneously added by the clerk of this court, in entering up the judgment which had been affirmed, it was held that: "The court has the inherent right to enter the judgment that it could have entered under the law, and intended to enter; and this may be done, not only at the term of court at which the judgment was entered, but at a subsequent term. Wilson v. Town of Handsboro, 99 Miss. 252, 54 So. 845, Ann. Cas. 1913E, 345; Rowell [& Co.] v. Sandifer, 129 Miss. 167, 91 So. 899; Wilson v. City of Lexington, 155 Miss. 157, 124 So. 268;" and the motion to correct such judgment was sustained. See also Couret et al. v. Conner et al., 118 Miss. 598, 79 So. 801, recognizing the rule by clear implication that a judgment which does not conform to that intended to be rendered by the court the same may be corrected by motion, and holding that if it seeks to effect a change in the decision actually made or to modify a judgment intended to be rendered, the objection thereto can only be reached by suggestion of error seasonably filed. To the same effect are the cases of Crudup v. Roseboom, 125 Miss. 205, 88 So. 497, and Huckaby v. Jenkins, 154 Miss. 378, 122 So. 487.

We therefore hold that the question is properly and timely raised by motion in the instant case, since the court did not intend that the five per cent damages on the $100,000 valuation fixed as a basis for the interlocutory appeal should be assessed against the appellants and included in the judgment of affirmance and remand.

The question of whether the appellee was entitled to recover such damages was of course not called to the attention of the court or considered by it in reaching a decision of the issue involved for determination, and such damages were not authorized on the affirmance of the appeal then pending. The motion to correct the judgment so as to eliminate such item is accordingly sustained.

Motion sustained.